**Richmond**

STANLEY RAY ROGERS

v.

COMMONWEALTH OF VIRGINIA

No. 0979-86

Decided December 1, 1987

COUNSEL

Stephen Vieira for appellant.

H. Elizabeth Shaffer, Assistant Attorney General (Mary Sue Terry, Attorney General, on brief), for appellee.

OPINION

**BAKER, J.** — Stanley Ray Rogers (appellant) appeals a judgment of the Circuit Court of the County of Chesterfield (trial court) which approved a jury verdict convicting him of rape. Previously, in June 1985, appellant was tried by a jury on indictments charging him with rape, attempted murder and abduction with intent to defile. He was acquitted of the attempted murder and abduction charges; however, the jury was unable to agree on a verdict on the rape charge and a mistrial was declared on that count. In April 1986, he was retried and convicted of the rape charge. Appellant raises two issues on appeal: (1) whether the doctrine of collateral estoppel, embodied in the Fifth Amendment guarantee against double jeopardy, barred the Commonwealth from introducing evidence of the offenses of abduction and attempted murder for which appellant was previously acquitted; and (2) whether the Commonwealth violated his right to a speedy trial by delaying retrial on the rape charge.

The evidence stated most favorably to the Commonwealth was essentially the same at the second trial as presented at the first. The victim, Tia Hayes, testified that she met appellant in the evening of December 4, 1984 at a gas station where he helped her inflate a tire. Appellant suggested that they have a drink together and the two went next door to the Pizza Inn and stayed for about an hour. They then went to a nightclub where they remained until 11:20 p.m., at which time, with Hayes' consent, appellant drove them to his house where they engaged in general conversation until midnight. When Hayes decided to leave, appellant grabbed her

wrists as she reached for her coat and pushed her against the sofa where she had been sitting. He told her, "You're not leaving. I'm going to fuck you tonight." Appellant made no further immediate move to carry out his threat and, after he appeared to calm, Hayes put her coat on and stated that she was leaving. Appellant grabbed her and threw her on the couch, threatened to hit her, ripped her blouse open and tore her panties and panty hose. She tried talking with appellant and again calmed him. He eventually told her that she was free to go; however, when she attempted to leave, appellant grabbed her and they struggled until appellant subdued Hayes with a headlock. He then threw her to the floor, jumped on her shoulders, grabbed her head and repeatedly banged it on the floor. Again Hayes was able to engage him in conversation and to calm him. She kept him talking to prevent him from further hurting her.

When appellant went to the bathroom Hayes unlocked the back door of the house and ran out to the street where she was pursued and caught by appellant. As he was dragging her back to the house along the gravel driveway she screamed, causing appellant to hit her in the face and threaten to kill her. Once inside the house, appellant threw Hayes on the floor of the living room, pinned her arms to the floor with his knees, once more struck her in the face and threatened to kill her. He attempted to tie Hayes to a chair but she successfully resisted. He beat her buttocks a number of times and told her that he was going to kill her. He then ordered her to take off the rest of her clothes and had sexual intercourse with her. In an effort to calm appellant so that he would not hurt her more, Hayes talked with him as they lay in bed together for the remainder of the night; however, at about 10:00 a.m. he again forcefully had intercourse with her. He then took her to a diner for breakfast, giving her a pair of sunglasses to cover her bruised eyes. After breakfast he drove her to her car and left her. She immediately reported appellant's actions to personal advisors and the police.

## I. COLLATERAL ESTOPPEL

Prior to the second trial, appellant filed a motion *in limine* asking the trial court to bar introduction of evidence of force, threat or intimidation relating to the charges of attempted murder and abduction with intent to defile on the ground that those issues

were decided in his favor by the acquittals in the first trial, and therefore the Commonwealth was collaterally estopped from presenting such evidence at the second trial. The trial court denied the motion. Appellant argues that to prove rape the Commonwealth had to prove the use of force, threat or intimidation and proof of these facts were essential for convictions of attempted murder or of abduction with intent to defile. Asserting the doctrine of collateral estoppel, he argues that having been acquitted of the attempted murder and abduction charges, the same evidence of force, threat or intimidation may not be used against him in the second trial of the rape charge which is alleged to have occurred at the same time as the alleged abduction.

The doctrine of collateral estoppel in criminal cases is embodied in the fifth amendment protection against double jeopardy and means "that when an issue of ultimate fact has once been determined by a valid and final judgment, that issue cannot again be litigated between the same parties in any future lawsuit." *Ashe v. Swenson*, 397 U.S. 436, 443 (1970). The party seeking the protection of collateral estoppel carries the burden of showing that the verdict in the prior action necessarily decided the precise issue he seeks to now preclude. *Rhodes v. Commonwealth*, 223 Va. 743, 749, 292 S.E.2d 373, 376 (1982). If the previous judgment of acquittal was based upon a general verdict, the trial court is required to "examine the record of the prior proceeding, take into account the pleadings, evidence, charges, and other relevant matter, and conclude whether a rational jury could have grounded its verdict upon an issue other than that which the defendant seeks to foreclose from consideration." *Ashe*, 397 U.S. at 444 (footnote omitted).

We recognize that in a proper case collateral estoppel may bar prosecution subsequent to acquittal or preclude introduction of evidence in a subsequent prosecution. *Simon v. Commonwealth*, 220 Va. 412, 415, 258 S.E.2d 567, 570 (1979). To decide whether the doctrine applies to this case and if so, its effect, we must first determine whether the jury in the first trial could have grounded its acquittal verdicts upon an issue or issues other than the sufficiency of the evidence of force, threat or intimidation employed by appellant against Tia Hayes during the incident in question. *See Ashe*, 397 U.S. at 444.

On the charge of attempted murder, the jury was instructed that in order to convict it had to find, among other elements, that appellant possessed the specific intent to murder Hayes. From an examination of the evidence, we find that the jury reasonably could have concluded that appellant never intended to murder Hayes but only to have sex with her. Although appellant threatened to kill Hayes, his first expression to her when she attempted to leave his house was that he intended to have sex with her. The jury reasonably could have concluded that the threats to kill were designed to overcome her unwillingness to have sex with him, rather than declarations of a true intent to murder. Clearly the attempted murder acquittal could have been based upon an issue other than appellant's employment of force, threat or intimidation, to-wit, specific intent to kill, and therefore the acquittal did not necessarily decide the precise question appellant seeks to preclude. *See Rhodes*, 223 Va. at 749-50, 292 S.E.2d at 377; *Jones v. Commonwealth*, 217 Va. 231, 237, 228 S.E.2d 127, 131 (1976).

In the first trial on the indictment for abduction with intent to defile, the jury was instructed that to convict it had to find beyond reasonable doubt that each of the following elements of the charge was proved:

> (1) That the defendant by force and intimidation, did seize and detain Tia Hayes; and
>
> (2) That the defendant did so with the intent to sexually molest Tia Hayes; and
>
> (3) That the defendant acted without legal justification or excuse.

Appellant does not claim that he abducted Hayes with legal justification or excuse and he concedes that he intended to have sex with her. He therefore argues that the "single rationally conceivable issue in dispute before the jury" was whether he used force or intimidation. *Ashe*, 397 U.S. at 445. By acquitting appellant of abduction, the jury, appellant argues, determined that the evidence of force and intimidation was insufficient to support a conviction for abduction.

The jury's acquittal verdict, however, need not have been grounded upon a determination of the issue of force and intimidation. The jury could have concluded that no seizure or detention took place. The jury may have viewed the evidence of appellant's grabbing Hayes, ripping her clothing, threatening her, subduing her with a headlock, hitting and beating her as tending to prove the charge of rape rather than abduction. Although the evidence indicates that a detention occurred, the detention which is sufficient to support an abduction conviction must be separate and apart from, and not merely incidental to, the restraint employed in the commission of rape when both charges arise from a continuous course of conduct. *Brown v. Commonwealth*, 230 Va. 310, 314, 337 S.E.2d 711, 714 (1985); *see Coram v. Commonwealth*, 3 Va. App. 623, 626, 352 S.E.2d 532, 533 (1987). The jury could have concluded that a separate seizure and detention did not occur here without rejecting the above mentioned evidence of appellant's use of force.

There was, however, evidence of abduction which can be separated from the evidence tending to prove rape. The victim testified that she ran out of appellant's house to the street and appellant chased her, grabbed her and forcibly dragged her back inside the house. For this evidence to be excluded from the rape trial, under the doctrine of collateral estoppel, appellant must show that the acquittal verdict in the abduction trial necessarily decided this factual issue in his favor. No other reason for exclusion is alleged.

Although the jury may have rejected the victim's testimony in arriving at its acquittal verdict, it is also reasonable to believe that the jury may have grounded its acquittal solely on the basis of the fact that the victim voluntarily accompanied appellant to his house. This fact may have persuaded the jury that no abduction occurred. Instead of considering the evidence of the seizure of the victim in the street when deciding the abduction charge, the jury may have viewed that seizure as incidental to the rape and considered it only as relating to the rape charge. While it may seem only logical to us, were we members of the jury, to decide the abduction charge based on our resolution of the victim's testimony that appellant seized her in the street and dragged her back to his house, we cannot know with certainty, from the general verdict of acquittal, what evidence was considered by the jury in arriving at its verdict. Thus, we cannot say with precision how the jury in the

first trial interpreted the victim's testimony. That testimony, therefore, is not barred by the doctrine of collateral estoppel. *See Simon*, 220 Va. at 418, 258 S.E.2d at 571-72.

As we have shown, the acquittal verdict does not necessarily mean that the jury rejected the evidence presented by the Commonwealth of appellant's use of force. We, therefore, conclude from the record of the first trial that "a rational jury could have grounded its verdict upon an issue other than that which the defendant seeks to foreclose from consideration." *Ashe*, 397 U.S. at 444; *see Jones*, 217 Va. at 237, 228 S.E.2d at 131. The Commonwealth thus was not collaterally estopped from reprosecuting appellant for rape nor from introducing evidence of force, threat and intimidation presented at the first trial to prove rape in the second trial.

## II. SPEEDY TRIAL

Appellant further argues that the Commonwealth violated his right to a speedy trial by not retrying him within a reasonable time after a mistrial was declared in his first trial. In analyzing his claim, we first note that Code § 19.2-243, which prescribes specific periods within which a criminal defendant must be offered a trial, is not applicable since appellant's retrial was necessitated by the jury's inability in the first trial to agree in its verdict. *See* Code § 19.2-243(5). Appellant's claim is therefore governed by the speedy trial guarantees of the sixth amendment to the United States Constitution and Article I, § 8 of the Virginia Constitution; our review is without distinction under both the federal and state provisions. *Holliday v. Commonwealth*, 3 Va. App. 612, 615-16, 352 S.E.2d 362, 364 (1987).

We examine the particular facts and circumstances of this case utilizing the balancing test announced in *Barker v. Wingo*, 407 U.S. 514 (1972), where both the conduct of the prosecution and the defendant are weighed by consideration of four factors: (1) length of delay, (2) reason for delay, (3) defendant's assertion of his right, and (4) prejudice to the defendant. *Id.* at 530.

A. LENGTH OF DELAY

> The length of the delay is to some extent a triggering mechanism. Until there is some delay which is presumptively prejudicial, there is no necessity for inquiry into the other factors that go into the balance. Nevertheless, because of the imprecision of the right to speedy trial, the length of delay that will provoke such an inquiry is necessarily dependent upon the peculiar circumstances of the case.

*Id.* at 530-31 (footnote omitted). Because, subsequent to a mistrial, the Commonwealth retried appellant by presenting essentially the same evidence as in the first trial, a delay of nine months between trials requires further inquiry.

B. REASON FOR DELAY

"[W]hen a defendant challenges the delay as unreasonable, the burden devolves upon the Commonwealth to show, first, what delay was attributable to the defendant and not to be counted against the Commonwealth and, second, what part of the delay attributable to the prosecution was justifiable." *Holliday*, 3 Va. App. at 617, 352 S.E.2d at 365 (quoting *Fowlkes v. Commonwealth*, 218 Va. 763, 767, 240 S.E.2d 662, 664 (1978)). Following the mistrial, appellant on September 13, 1985, filed a plea of former jeopardy, a motion *in limine*, and several discovery motions. On September 17, 1985, he filed a memorandum in support of his motions. A hearing on the motions was held September 25, 1985, before Judge Daffron, who denied the former jeopardy plea and deferred the other motions to Judge Gates who was scheduled to hear the case.

On September 26, 1985, appellant filed an amended motion to suppress. Four days later he filed a motion for dismissal or, in the alternative, for continuance. On October 2, 1985, he filed a second motion for dismissal or, in the alternative, for continuance. A day later he filed a memorandum in support of his motion *in limine*. The following day, October 4, 1985, a hearing was held before Judge Gates who ordered that the motions be deferred and set before Judge Daffron who presided at the first trial and was familiar with the case.

On November 14, 1985, the scheduled hearing on appellant's motions was continued due to the unavailability of Judge Daffron. The hearing was held November 25, 1985, at which time the motion to suppress was denied and a ruling on the motion *in limine* was deferred. On January 15, 1986, appellant filed a motion for an evidentiary hearing on the motion *in limine*, as well as a motion for disclosure of exculpatory material and a motion for dismissal for denial of his right to a speedy trial. Two days later he filed a motion for a continuance to await a decision in a case before the Supreme Court which might affect the disposition of the motion *in limine*. On January 22, 1986, appellant filed a supplemental memorandum in support of the motion *in limine*. The next day at a hearing before Judge Daffron, the motion *in limine*, motion for dismissal and motion for continuance were denied. A hearing on the motion for disclosure of exculpatory material was continued to the following day at which time the material in question was found not to be exculpatory. Appellant alleged to the trial court that the Commonwealth interfered with his right to counsel and the hearing was continued at the joint request of appellant and the Commonwealth to obtain the testimony of appellant's former girlfriend, Terry Sullivan, on that issue.

On February 14, 1986, appellant filed a second plea of former jeopardy. On February 18, 1986, a hearing was held on the plea and testimony was also taken from Sullivan. The court denied the plea and denied appellant's motion relative to his claim of interference with his right to counsel. The trial court and counsel then agreed to a trial date of April 23, 1986, at which time appellant was retried.

Appellant filed numerous motions and memoranda, the disposition of which required several hearings and consequently a delay in the date of retrial. In claiming a denial of his right to a speedy trial, appellant cannot take advantage of the delay occasioned by the careful consideration by the trial court of his various motions and pleas. *Stephens v. Commonwealth*, 225 Va. 224, 234, 301 S.E.2d 22, 27-28 (1983). Thus, the more than five months taken for the resolution of appellant's motions cannot be weighed against the Commonwealth.

Two months of the delay were caused by the reassignment of the case to the judge who presided over the first trial and his brief unavailability to hear appellant's motions. Nothing in the record

indicates that this delay was a deliberate attempt to prejudice appellant. During this time period appellant was able to file an amended motion to suppress and a memorandum in support of his motion *in limine*. We conclude that this two month delay should not be weighed heavily against the Commonwealth. *See Barker*, 407 U.S. at 531.

The record discloses no particular reason why trial was not held during the final two months of the nine month period between trials, but it does indicate that the parties concurred in setting the final trial date and that appellant made no objection to the additional delay.

## C. ASSERTION OF THE RIGHT

Six months after the mistrial was declared in appellant's first trial, he moved for a dismissal based on his right to a speedy trial. As we have already outlined, both prior and subsequent to the speedy trial motion, appellant filed several motions, pleas and memoranda in support thereof seeking outright dismissal of the prosecution, or in the case of the motion *in limine*, seeking to limit the admissible evidence such that prosecution would probably be impossible. By filing such motions, appellant was not asking for a speedy trial but rather for disposition of his case on his pretrial motions and pleas. Appellant clearly was in no hurry for trial so long as the possibility remained that the case would end with a favorable pretrial ruling. Appellant's assertion of the right to a speedy trial must be viewed in the context of his other motions. Under the balancing test approach a court is allowed "to weigh the frequency and force of the [objection to delay] as opposed to attaching significant weight to a purely *pro forma* objection." *Barker*, 407 U.S. at 529; *see also Stephens*, 225 Va. at 233-34, 301 S.E.2d at 27. We therefore conclude that appellant's assertion of his right to a speedy trial should not be weighed strongly in his favor.

## D. PREJUDICE

Three interests safeguarded by the speedy trial right were identified in *Barker*: (1) preventing oppressive pretrial incarceration; (2) minimizing anxiety and concern of the accused; and (3) limiting the possibility that the defense will be impaired. *Barker*,

407 U.S. at 532. In *United States v. MacDonald*, 456 U.S. 1 (1982), the Supreme Court noted that the third interest, ensuring that a defendant's case would not be prejudiced by a delayed trial, is primarily protected by the due process clause rather than the sixth amendment. *Id.* at 8.

During the period between his trials, appellant was free on bond with the exception of a one month period of jail time after bond was revoked due to his arrest on an unrelated misdemeanor charge. Appellant thus did not suffer oppressive pretrial incarceration.

Because more than half of the delay period between trials was attributable to appellant's pretrial activity, any anxiety and concern on his part caused by the passage of time before trial cannot be charged to the Commonwealth. Furthermore, there is no evidence in the record that appellant's employment was disrupted, that his associations were curtailed, or that he or his family suffered in any significant way because of the length of time between trials. *See Holliday*, 3 Va. App. at 620-21, 352 S.E.2d at 367.

Appellant argues that the delay prejudiced his defense since it allowed the Commonwealth to learn of and locate Terry Sullivan, appellant's former girlfriend, and use her as a witness. Appellant, though, also sought Sullivan in connection with his claim of Commonwealth interference with his right to counsel, and requested jointly with the Commonwealth a continuance of a pretrial hearing to obtain Sullivan's testimony. Appellant's motion relative to his right to counsel claim was subsequently denied. There is thus no evidence that the delay between trials prejudiced appellant's defense; on the contrary it provided the opportunity to explore the basis for a pretrial motion.

Having reviewed the factors outlined in *Barker*, we conclude that appellant's constitutional right to a speedy trial was not abridged. As we have pointed out, much of the delay was precipitated by appellant's attempts to resolve the charge against him prior to trial. In addition, the record fails to show that he suffered prejudice.

Accordingly, the judgment appealed from is

*Affirmed.*

Koontz, C.J., and Benton, J., concurred.