COURT OF APPEALS OF VIRGINIA


Present:  Chief Judge Fitzpatrick, Judges Benton, Willis, Elder,
          Annunziata, Bumgardner, Frank, Humphreys, Clements and
          Senior Judge Coleman[*]
Argued at Richmond, Virginia


STEVEN CHRISTOPHER SEVACHKO
                                              OPINION BY
v.    Record No. 2513-98-2          JUDGE SAM W. COLEMAN III
                                             APRIL 24, 2001
COMMONWEALTH OF VIRGINIA


                  UPON A REHEARING EN BANC

       FROM THE CIRCUIT COURT OF THE CITY OF CHARLOTTESVILLE
                James M. Lumpkin, Judge Designate

          Edmund R. Michie for appellant.

          Kathleen B. Martin, Assistant Attorney
          General (Mark L. Earley, Attorney General, on
          brief), for appellee.


     Steven Christopher Sevachko was convicted by a jury of

perjury, in violation of Code § 18.2-434.  The basis for the

perjury conviction was that Sevachko had testified falsely under

oath at his trial for driving on a suspended license when he

testified that he had not been driving.  The Commonwealth

attempted to prove that Sevachko had testified falsely about not

driving by proving through the arresting officer that Sevachko

---

[*] Judge Coleman participated in the hearing and decision of this case prior to the effective date of his retirement on December 31, 2000 and thereafter by his designation as a senior judge pursuant to Code § 17.1-401.

was, in fact, driving at the time -- a fact the Commonwealth had previously attempted to prove through the officer's testimony in Sevachko's trial for driving on a suspended license.

A panel of this Court unanimously reversed the perjury conviction, holding that the Commonwealth was collaterally estopped from relitigating whether Sevachko was in fact driving. The panel, however, was divided upon the question whether the prosecution should be dismissed or remanded for further proceedings. See Sevachko v. Commonwealth, 32 Va. App. 561, 529 S.E.2d 803 (2000). We granted rehearing en banc to resolve that question.

Sevachko argues that the doctrine of collateral estoppel not only precludes the Commonwealth, in the perjury prosecution, from proving the underlying controverted fact from the original prosecution that he was driving a motor vehicle on a particular date, but also precludes the perjury prosecution altogether. Upon rehearing en banc, we hold that the Commonwealth was collaterally estopped from proving in the perjury prosecution that Sevachko drove his motor vehicle on the date in question. Therefore, because the Commonwealth introduced evidence to that effect and undertook to relitigate that fact in the perjury prosecution, we reverse the perjury conviction. However, because the Commonwealth is not collaterally estopped from proving that Sevachko perjured himself in the prior proceeding as to a material fact by proving

- 2 -

facts other than that he was driving on the date in question, we remand the case to the trial court for such further proceedings as the Commonwealth may be advised.

Additionally, Sevachko argues that the trial court erred in the perjury prosecution by admitting the testimony of his former attorney, who represented him in the driving on a suspended license case. Sevachko contends that allowing his former attorney to testify about statements he had made to the attorney during the course of the attorney's representation of him in the prior proceeding violated the attorney-client privilege and, thus, was inadmissible. Because this issue is likely to arise again on remand if the Commonwealth elects to pursue the prosecution, we address that question.

## I. BACKGROUND

Sevachko was charged with having driven on a suspended license. The general district court appointed an attorney to represent Sevachko. Prior to trial, the attorney informed the trial court that she was confronted with a "dilemma," and the trial court permitted her to withdraw. Sevachko, who had a second attorney appointed to represent him, was subsequently found not guilty of the driving on suspended license charge after testifying that he had not been driving on the date alleged.

Several months before Sevachko's driving on a suspended license trial, his first court-appointed attorney became

- 3 -

employed with the Albemarle County Commonwealth's Attorney's Office, the same office that was prosecuting the driving on a suspended license case against Sevachko.  Following Sevachko's acquittal of those charges, the first court-appointed attorney heard the case being discussed in the office.  She made "an extemporaneous statement to [her] boss" that Sevachko "was a former client of mine, I remember that case, he told me that he was going to say he wasn't driving."  Sevachko's former court-appointed attorney and the Commonwealth's Attorney then consulted the Code of Professional Responsibility and concluded that the Code required the attorney to disclose to the circuit court what had occurred.  The attorney filed a report with the Charlottesville Police Department and the City of Charlottesville Commonwealth's Attorney's Office and, as a result, the Commonwealth's Attorney indicted Sevachko for perjury.

At the perjury trial, Sevachko's former court-appointed attorney testified voluntarily for the Commonwealth and did not assert the attorney-client privilege on behalf of her client. Sevachko objected to her testifying on the ground that his confidential discussions with his attorney were protected by the attorney-client privilege.  The trial court ruled that the privilege did not apply to protect a fraud that had been perpetrated on the court.  The former attorney testified that,

during the course of her representation of Sevachko for the driving on a suspended license charge, Sevachko admitted he was driving. She advised Sevachko to plead guilty based on his admission. She testified that Sevachko then stated, "What will happen if I say I wasn't driving." She advised Sevachko that the statement would be perjury and that if he persisted in that defense, she would seek leave to withdraw as his counsel. She testified that Sevachko said he was going to testify that he was not driving. The attorney then sought, and was granted, leave to withdraw.

## II.  ANALYSIS

### A.  Collateral Estoppel

We first consider whether the doctrine of collateral estoppel precluded the perjury prosecution or merely precluded the Commonwealth from proving that Sevachko was driving on the date in question.

Collateral estoppel is a doctrine of fact preclusion that is "embodied in the fifth amendment protection against double jeopardy." Simon v. Commonwealth, 220 Va. 412, 415, 258 S.E.2d 567, 569 (1979). "[W]hen an issue of ultimate fact has once been determined by a valid and final judgment, that issue cannot again be litigated between the same parties in any future lawsuit." Ashe v. Swenson, 397 U.S. 436, 443 (1970). The doctrine does not, however, operate to preclude a party from

- 5 -

proving the elements of a cause of action or offense by other evidence independent of the fact which the party is collaterally estopped from proving. See Simon, 220 Va. at 419, 258 S.E.2d at 572. Only where proof of the estopped fact is essential to proving an element of the newly charged offense or cause of action does the doctrine of collateral estoppel also preclude proof of an essential element of the other offense, thereby foreclosing a prosecution for the other offense. See Ashe, 397 U.S. at 445-47 (holding that the state was collaterally estopped from proving that the defendant was the robber in the subsequent proceedings because the state failed to prove, in the first of a series of prosecutions, that the defendant was the robber, and proof of that fact was necessary and essential to prove the subsequent robberies). "The party seeking the protection of collateral estoppel carries the burden of showing that the verdict in the prior action necessarily decided the precise issue he seeks to now preclude." Rogers v. Commonwealth, 5 Va. App. 337, 341, 362 S.E.2d 752, 754 (1987).

In the trial for driving on a suspended license, the fact about which Sevachko allegedly testified falsely was that he was not driving on the offense date. The dissenters reason that any evidence which proved that Sevachko testified falsely as to that fact must necessarily prove, at least by implication, that he was driving on the offense date -- the very fact the

- 6 -

Commonwealth is estopped from relitigating. However, that reasoning by the dissenters would preclude every perjury prosecution against a former defendant who was acquitted and who testified falsely about an element of the Commonwealth's case. That application of the doctrine of collateral estoppel would, on the other hand, not preclude a perjury prosecution against a defendant who had testified falsely but had been convicted. The doctrine of collateral estoppel is neither that restrictive nor should it be applied in a manner to reach such an anomalous result.

Here, proof that Sevachko was driving on the date of the charged offense was not a necessary and essential element to prove the perjury offense. Whether Sevachko testified falsely about driving was the essential element of the perjury prosecution and that fact could have been proven by evidence other than proof that Sevachko was, in fact, driving. While the Commonwealth was estopped from proving in the perjury prosecution the fact that Sevachko was driving, the Commonwealth was not precluded from proving by other means that he perjured himself, such as by discrediting his alibi that he was having his car repaired, by an admission from him that he had perjured himself, or perhaps by evidence that he admitted to others after the fact that he had testified falsely. Even though the fact finder may, in such situations, coincidentally or necessarily

- 7 -

conclude that Sevachko was driving when the Commonwealth proved that he testified falsely, the Commonwealth does not violate the constitutionally based collateral estoppel bar by proving, by such other evidence, that Sevachko implicitly lied when he testified that he was not driving.  Therefore, the bar created by the collateral estoppel doctrine in this case is that the Commonwealth cannot, as it did here, prove Sevachko perjured himself by relitigating and proving that he was, in fact, driving.  See United States v. Carter, 60 F.3d 1532 (11th Cir. 1995); United States v. Haines, 485 F.2d 564 (7th Cir. 1973); Adams v. United States, 287 F.2d 701 (5th Cir. 1961); State v. Hutchins, 746 A.2d 447 (N.H. 2000); People v. Briddle, 405 N.E.2d 1357 (Ill. App. Ct. 1980).

At trial, the Commonwealth introduced Officer A.J. Gluba's testimony that Sevachko was driving on a suspended license, along with his former attorney's testimony, to prove that Sevachko testified falsely in the prior proceeding.  Because we hold that the Commonwealth is estopped from proving that Sevachko was driving, we find that the trial court erred in admitting Gluba's testimony.

Accordingly, we reverse the conviction and remand the case for further proceedings if the Commonwealth be so advised.  See Simon, 220 Va. at 419-20, 258 S.E.2d at 572-73 (remanding case and holding that Commonwealth is not precluded from prosecuting

- 8 -

the defendant in a subsequent prosecution based on other evidence independent of the fact which the Commonwealth is collaterally estopped from proving).

### B.  Confidential Communication

"The attorney-client privilege is the oldest of the privileges for confidential communications known to the common law."  <u>Upjohn v. United States</u>, 449 U.S. 383, 389 (1981). "Confidential communications between attorney and client made because of that relationship and concerning the subject matter of the attorney's employment 'are privileged from disclosure, even for the purpose of administering justice.'"  <u>Commonwealth v. Edwards</u>, 235 Va. 499, 508-09, 370 S.E.2d 296, 301 (1988) (citations omitted).

> The relationship between an attorney and [her] client is a sacred one.  In that relationship, the client must be secure in the knowledge that any information he reveals to counsel will remain confidential. The confidentiality of the attorney-client relationship is severely compromised, if not destroyed, when, after representing a client, a lawyer joins in the criminal prosecution of that client with respect to the identical matter about which the attorney originally counseled the client. Such switching of sides is fundamentally unfair and inherently prejudicial.  Without question, the client's right to a fair trial, secured by the due process clauses of the fifth and fourteenth amendments, is compromised under these circumstances.

<u>United States v. Schell</u>, 775 F.2d 559, 565 (4th Cir. 1985).

"The proponent has the burden to establish that the

attorney-client relationship existed, that the communications under consideration are privileged, and that the privilege was not waived."  Edwards, 235 Va. at 509, 370 S.E.2d at 301.

Sevachko's former attorney disclosed two confidences that Sevachko had confided in her concerning the subject of the litigation.  First, she disclosed to her employer, the Albemarle County Commonwealth's Attorney, that Sevachko admitted to her he was driving the automobile on the date charged.  Second, she disclosed that Sevachko told her he intended to testify untruthfully that he was not driving.  As a result of that disclosure, she sought and obtained leave of court to withdraw as Sevachko's court-appointed attorney.[1]  Thus, the issue on appeal is whether the communications by Sevachko to his attorney were privileged and whether the trial judge erred by admitting the evidence over Sevachko's objection in violation of that privilege.

---

[1] A lawyer is prohibited from knowingly revealing a confidence or secret of her client, except, among other things, where the client has expressed his intention "to commit a crime and the information is necessary to prevent the crime" or where the lawyer has information which "clearly establishes that the client has, in the course of the representation, perpetrated a fraud related to the subject matter of the representation upon a tribunal."  Code of Prof. Resp. DR 4-101(C), (D) (1999).  We do not decide whether counsel's disclosures violated DR 4-101.  See Fisher v. Commonwealth, 26 Va. App. 788, 794, 497 S.E.2d 162, 165 (1998) (questioning "'the propriety of equating the force of a disciplinary rule with that of decisional or statutory law'" (citation omitted)).

We hold that Sevachko's disclosure to his attorney that he was driving on the date of the charged offense was made in relation to and during the course of the attorney's representation of her client and that the communication was confidential and privileged and not subject to disclosure. See Edwards, 235 Va. at 508-09, 370 S.E.2d at 301. However, we hold that Sevachko's disclosure to his attorney that he was going to testify untruthfully that he was not driving was not privileged, and, thus, the statement was admissible under the crime-fraud exception to the privilege.

"[I]t is settled under modern authority that the [attorney-client] privilege does not extend to communications between attorney and client where the client's purpose is the furtherance of a future intended crime or fraud." 1 McCormick on Evidence § 95, at 380 (John W. Strong, ed., 5th ed. 1995). The Supreme Court in Seventh District Committee v. Gunter, 212 Va. 278, 183 S.E.2d 713 (1971), applying this principle, held that "[t]he protection which the law affords to communications between attorney and client has reference to those which are legitimately and properly within the scope of a lawful employment and does not extend to communications made in contemplation of a crime, or perpetration of a fraud." Id. at 287, 183 S.E.2d at 719 (emphasis added) (citing Strong v. Abner, 105 S.W.2d 599 (Ky. 1937)).

- 11 -

In Gunter, the defendant, an attorney, was charged with malpractice and unethical and unprofessional conduct. The Seventh District Committee of the Virginia State Bar (Committee) was assigned to investigate the alleged misconduct. Gunter employed counsel to represent him at the Committee hearing to defend the allegations of malpractice and unethical and unprofessional conduct. During his strategy meetings with his attorneys, Gunter intentionally misrepresented to his attorneys a material and critical fact. Believing their client's representation, Gunter's attorneys perpetuated the misrepresentation to the Committee. Gunter was fully aware of his attorneys' intended representations and was fully apprised of their strategy. Before final resolution of the matter before the Committee, Gunter's attorneys learned of their client's misrepresentation and sought leave to withdraw. At a subsequent hearing before the Committee, after Gunter's counsel withdrew, Gunter told the Committee that he initially considered misrepresenting the facts to the Committee but that he changed his mind and was coming forward with the truth of his own volition. As a result of these developments, the Committee filed a complaint against Gunter alleging that he, for the purpose of misleading the Committee, altered, changed, and falsified a date upon a statement, which was material to the Committee's investigation of Gunter.

At trial, the court admitted evidence from Gunter's attorneys detailing communications Gunter had with his attorneys which would prove that Gunter was aware of their strategy and that Gunter gave his attorneys false information knowing that the attorneys would misinform the Committee.  The Supreme Court affirmed the trial court's ruling that the evidence was admissible, finding that the "communications alleged to be privileged were made in the furtherance of the commission of an intended fraud on the Committee."  212 Va. at 288, 183 S.E.2d at 719-20.  The Supreme Court stated, "'[T]he perpetration of a fraud is outside the scope of the professional duty of an attorney and no privilege attaches to a communication and transaction between an attorney and client with respect to transactions constituting the making of a false claim or the perpetration of a fraud.'"  212 Va. at 287, 183 S.E.2d at 719 (quoting Kneale v. Williams, 30 So.2d 284, 287 (Fla. 1947) (en banc)).

Here, Sevachko's disclosure to his attorney regarding his intent to commit perjury was made prior to trial and in contemplation of committing perjury and a fraud upon the court.  The privilege does not permit a litigant to commit a fraud upon a court and, therefore, to that end, the privilege does not apply to communications, which if not revealed would hamper the administration of justice.  See Gunter, 212 Va. at 287-88, 183

- 13 -

S.E.2d at 719.  Accordingly, the attorney-client privilege did not attach to Sevachko's statement to his attorney pertaining to his intent to commit perjury; therefore, the statement was admissible in the perjury prosecution.

Accordingly, we hold that the trial court erred by admitting Sevachko's communication to his attorney that he was, in fact, driving, because the communication was made in the course of the attorney-client relationship and it concerned the subject matter of the attorney's employment; thus, it was privileged from disclosure.  However, Sevachko's communication to his attorney that he intended to commit perjury was not protected by the attorney-client privilege because the statement was made in contemplation of a crime and, thus, was admissible.

<u>Reversed and remanded</u>.

Bumgardner, J., with whom Benton, Annuziata and Clements, JJ., join, dissenting.

I respectfully dissent from the decision to permit another trial.  The unusual procedural posture of this case dictates dismissal.  The general verdict rendered in criminal trials is a curtain that shrouds the components of the decision returned.  Normally, a trial record would not reveal whether the trial resolved a single issue and a single fact.  However, this record is an exception.

The sole issue at the first trial was whether the defendant drove his automobile on December 24, 1995.  In the perjury trial, the Commonwealth had to prove the defendant made a false statement under oath.  The only evidence offered to prove the defendant lied at the first trial was the admission to his attorney that he did drive.  That was the sole specification of perjury alleged, argued, or attempted at trial.

Dismissal would not, as the majority suggests, preclude every perjury prosecution of a defendant who testified falsely.  Dismissal would simply acknowledge that collateral estoppel must bar retrial in the rare situation that permits ascertaining a single fact was disputed in each prosecution, and that fact was the same in both.

I do not address the issue of attorney-client privilege because collateral estoppel precludes another trial.