## CIRCUIT COURT OF ROCKINGHAM COUNTY

Commonwealth of Virginia

v.

Julian Cappell

March 8, 2002

BY JUDGE JOHN J. MCGRATH, JR.

On November 19, 2001, the Grand Jury of Rockingham County returned four indictments against the defendant. These indictments charged Julian Cappell with first degree murder of Rosendo Cruz (Indictment 1) (Section 18.2-32); use of a firearm in the commission of a felony, namely: first degree murder (Indictment 2) (Section 18.2-53.1); possession of a firearm after having been convicted of a felony (Indictment 3) (Section 18.2-308.2); and willful discharge of a firearm within one thousand feet of elementary school property (Indictment 4) (Section 18.2-280). On November 19, 2001, the Commonwealth moved to join Indictments 1, 2, and 4, and, over the objection of the defendant, that motion was granted. It was found by the Court that under the ruling in *Hackney v. Commonwealth*, 28 Va. App. 288 (1998), the felon in possession charge would have to be tried separately from the other charges. Therefore, it was also ordered that on the day of trial on Indictments 1, 2, and 4, a later trial date would be established for Indictment No. 3, the felon in possession charge.

Indictments No. 1, 2, and 4 were tried before a felony venire on February 27 and 28, 2002. After a considerable period of deliberation, on February 28th, the jury returned a verdict acquitting the defendant of all three charges on which he had been tried. At the conclusion of that case, the government asked to set a trial date on the remaining charge of felon in possession (Section 18.2-308.2). A trial date of March 11, 2002, was set at that time.

The defendant has now moved to dismiss the pending indictment and/or to bar its prosecution on the grounds of the doctrine of collateral estoppel or "issue preclusion" as set forth in *Ashe v. Swenson*, 397 U.S. 436 (1970), and

*Sevachko v. Commonwealth*, 35 Va. App. 346 (2001). *See also Rhodes v. Commonwealth*, 223 Va. 743 (1982); *Johnson v. Commonwealth*, 221 Va. 736 (1981); *Simon v. Commonwealth*, 220 Va. 412 (1979); *Lee v. Commonwealth*, 219 Va. 1108 (1979); and *Jones v. Commonwealth*, 217 Va. 231 (1970).

## I. *Evidence at the First Trial*

The undisputed evidence at the first trial showed that in the late evening of September 12, 2000, the defendant along with five other black males and one white female drove to a particular neighborhood in Harrisonburg to confront certain Hispanic males who had earlier in the day had an argument with and punched one of defendant's friends and original co-defendants. The group that went to the scene of the alleged crime consisted of six males and one female. One of the males and the lone female apparently remained in their sports utility vehicle (SUV) and from that vantage point they were unable to observe the scene of the crime, but they did hear multiple gunshots.

Two of the individuals who testified at trial stated that they were either in or about to participate in the incipient stages of a fight or brawl and that the defendant was at the scene. At least two other witnesses who were at the homicide scene stated they saw the defendant's girlfriend's SUV at the scene and that defendant and one or two other individuals were in the SUV earlier in the evening. Five of the witnesses testified that they heard gunshots but did not see a gun or who fired the shots. One individual, Arturo Barajas, who was the victim's friend and was standing next to him at the time of the shooting, spun around when he heard the racking of an automatic pistol. However, he was only able to testify that there were three black men behind him and that one had a gun, but he could not identify the individual with the gun.

After an extensive search of the crime scene the gun was never recovered but the police did recover a number of spent bullets from the ground and from the victim's body, and they also recovered spent shell casings in the immediate vicinity of the homicide. Scientific evidence established without contradiction that the bullets and casings recovered at the crime scene and the morgue had been fired from the same 9mm handgun. There was no suggestion or evidence of more than one shooter or more than one handgun.

Each of the witnesses testified at trial that prior to and after the shooting they did not see the defendant in possession of a gun nor did they see anyone else in the group in possession of a gun. The only individual to state that he saw a "gun-like object" was a witness named Kenneth Shawn McAfee. Mr.

McAfee testified that he was "ninety-five percent" certain that the holder of the gun-like object, which was emitting muzzle flashes, was the defendant.

Needless to say, the attack on the credibility of Mr. McAfee during the trial was intense and prolonged. Mr. McAfee, in addition to having made a number of contradictory and inconsistent statements to investigating officers, also suffered under the liability of having been a heavy crack cocaine user as recently as a few days prior to the trial. In fact, when he testified at trial he was incarcerated on a PB-15 for an alleged probation violation (using drugs) which had been executed the day before the trial. Mr. McAfee's credibility also suffered from his having previously been convicted of approximately six felonies and approximately eight misdemeanors involving lying, cheating, or stealing.

Although the Court does not have the transcript of the proceedings before it at this time, the trial having occurred only last week, the Court does have extensive notes from the trial, and the testimony at trial is fresh in everyone's mind.

## II. *Argument of the Parties*

It is now clear that the doctrine of collateral estoppel (minus the necessity of mutuality) is a firmly established part of the constitutionally mandated due process rights of defendants in state criminal proceedings. *See, e.g., Ashe v. Swenson*, 397 U.S. 436 (1970); and *Sevachko v. Commonwealth*, 35 Va. App. 346 (2001). Relying on *Ashe v. Swenson*, *supra*, the defendant argues that an ultimate issue and, in fact, *the only* issue that was adjudicated in the first trial was the question of who was the individual holding the firearm when it was fired at, and resulted in the death of, Rosendo Cruz.

Although this is a fair statement as regards the trial that occurred on Indictments 1 and 2, it is not an accurate statement as to Indictment No. 4, which charged the discharge of a firearm within one thousand feet of school property. In fact, during the trial the prosecution had difficulty in placing the exact location of the firearm when it was discharged. Extrapolating from various locations where spent casings were found, the Commonwealth could only arguably prove by expert testimony that the gun "was fired" from approximately 960.12 feet or 979.13 feet from the closest part of the school's property line. A rational juror could have acquitted on this charge by finding that defendant possessed and fired the gun, but that the gun was discharged more than 1,000 feet from the school property.

It must be noted that, at the first trial, there was never an issue raised as to the fact of homicide, self-defense, or accident. There was no evidence

concerning two guns and/or two or more shooters. The victim was shot three times – in the arm, in the back, and in the hip. In short, there was no question that the homicide was committed by a single gunman; the only issue that the jury had to decide was "was the defendant the gunman?" The Commonwealth asked all of its witnesses whether they had seen the defendant in possession of a gun before, during, and after the homicide on September 12, 2000, and with the exception of Mr. McAfee, they all testified in the negative.

On the other hand, the Commonwealth takes the position that the general verdict of acquittal rendered on Indictments No. 1, 2, and 4 does not provide a factual basis from which the defendant can meet his burden of proving that the "ultimate issue," which is central to the second trial, was litigated and determined against the Commonwealth during the first trial, *i.e.*, that the defendant possessed the gun which was used to shoot Rosendo Cruz. The Commonwealth argues that under *Ramadan v. Commonwealth*, 28 Va. App. 708 (1998), and similar cases, a defendant asserting collateral estoppel protection is required to prove that there is no basis, other than the fact on which preclusion is sought, upon which a prior court or jury could have acquitted the defendant. The reasoning of the Commonwealth's position is fairly summarized by the following lengthy extract from *Ramadan v. Commonwealth, supra*:

> The doctrine of collateral estoppel arises from the Fifth Amendment protection from double jeopardy and instructs that "when an issue of ultimate fact has once been determined by a valid and final judgment, that issue cannot again be litigated between the same parties in any future lawsuit." *Jones v. Commonwealth*, 217 Va. 231, 232, 228 S.E.2d 127, 128 (1976) (quoting *Ashe v. Swenson*, 397 U.S. 436, 443, 25 L. Ed. 2d 469, 90 S. Ct. 1189 (1970); *Rogers v. Commonwealth*, 5 Va. App. 337, 341, 362 S.E.2d 752, 754 (1987)). However, "the doctrine . . . does not apply if it appears that the prior judgment could have been grounded 'upon an issue other than that which the defendant seeks to foreclose from consideration'." *Lee v. Commonwealth*, 219 Va. 1108, 1111, 254 S.E.2d 126, 127 (1979) (quoting *Ashe*, 397 U.S. at 444). "The party seeking the protection of collateral estoppel carries the burden of showing that the verdict in the prior action necessarily decided the precise issue he now seeks to preclude." *Rogers*, 5 Va. App. at 341, 362 S.E.2d at 754 (citation omitted). Since the principle of collateral estoppel was enunciated in *Ashe*, "numerous attempts to invoke the doctrine have met with little success." *Jones*, 217 Va. at 233, 228 S.E.2d at 128. An acquittal,

"standing alone, does not permit a conclusion with respect" to a court's findings or rationale. *Copeland v. Commonwealth* 13 Va. App. 450, 453, 412 S.E.2d 468, 470 (1991). General "district courts frequently [as here] mark misdemeanor warrants 'dismissed' without assigning specific grounds," acting, "sometimes . . . not upon an adjudication of substantive issues, but upon some technical procedural defect or, indeed, upon nothing more than considerations of leniency." *Lee*, 219 Va. at 1111, 254 S.E.2d at 128, n. 3; *see e.g., Clodfelter v.Commonwealth*, 218 Va. 98, 107-08, 235 S.E.2d 340, 345-46 (1977) (district court may have dismissed misdemeanor believing that offense was "subsumed in . . . felony . . . certified to the grand jury"). Thus, it is "usually impossible to determine with any precision upon what basis the [fact finder] reached a verdict in a criminal case," leaving the defense of collateral estoppel available to an accused only in "a rare situation." *Jones*, 217 Va. at 233, 228 S.E.2d at 128-29 (quoting *United States v. Tramunti*, 500 F.2d 1334, 1346, cert. denied, 419 U.S. 1079, 42 L. Ed. 2d 673, 95 S. Ct. 667 (1974)). *Id.* at p. 714-15.

28 Va. App. at 713.

There is no question that, at both the federal and state level, the concept of collateral estoppel in criminal proceedings has generated a near blinding array of cases which make technical distinctions and fact specific rulings so as to almost defy categorization. *See, e.g., Schiro v. Farley*, 510 U.S. 222 (1994); *United States v. Dixon*, 509 U.S. 688 (1993); *Dowling v. United States*, 493 U.S. 342 (1990); *Sevachko v. Commonwealth*, 35 Va. App. 346 (2001); *Ramadan v. Commonwealth*, 28 Va. App. 708 (1998); and *Rogers v. Commonwealth*, 5 Va. App. 337 (1987).

However, the lodestar of analysis has to be the Supreme Court's direction in *Ashe v. Swenson*:

The federal decisions have made clear that the rule of collateral estoppel in criminal cases is not to be applied with the hypertechnical and archaic approach of a 19th Century pleading book, but with realism and rationality. When a previous judgment of acquittal was based upon a general verdict, as is usually the case, this approach requires a court to examine that record of a prior proceeding, taking into account the pleadings, evidence, charge, and other relevant matter, and conclude whether a rational jury could have grounded its verdict upon an issue other than that which the defendant seeks to

foreclose from consideration. The inquiry must be set in a practical frame and viewed with an eye to all the circumstances of the proceeding. . . . Any test more technically restrictive would, of course, simply amount to a rejection of the rule of collateral estoppel in criminal proceedings, at least in every case where the first judgment was based upon a general verdict of acquittal.

397 U.S. at 444.

The question, therefore, that is presented by the instant Motion is whether a "rational jury" could have acquitted defendant on any grounds other than the jury's finding that the Commonwealth had failed to prove beyond a reasonable doubt that the defendant was the individual who held the gun that was used in the murder of Rosendo Cruz. *See, e.g., Rhodes v. Commonwealth*, 223 Va. 743 (1982); *Copeland v. Commonwealth*, 13 Va. App. 450 (1991); *Rogers v. Commonwealth*, 5 Va. App. 337 (1987); and *United States v. Parris*, 88 F. Supp. 2d 555, 563 (E.D. Va. 2000).

The answer to that question in this case and on this record is a clear "no." There was never any dispute in the first trial other than the identity of the person who fired the gun that killed the victim. There never was an issue of multiple guns or multiple shooters; there was never an issue of self-defense; and there was never an issue of an accidental homicide.

The Court instructed the jury on the elements of homicide in the first and second degree, and that the jury had to find (1) that defendant killed Rosendo Cruz, (2) that the killing was either malicious or willful, deliberate, and premeditated in order to convict him of either grade of murder. (Instruction 13.) Although it is theoretically possible that the jury acquitted because it did not find that the homicide was committed with malice or that the homicide was not willful, deliberate, and premeditated, that would have not been the mental process of a rational jury.

The victim in this case was standing at or near his front yard drinking beer at about 11:30 P.M. A gang of five individuals drove onto his street, approached him carrying a baseball bat and makeshift clubs, a number of shots rang out, and the victim was shot in the abdomen, the arm, and the back. The shot which went through the victim's arm and into his chest, heart, and lungs was a "rapidly lethal wound" which would have caused death in a matter of seconds or minutes.

The jury's verdict cannot be considered anything other than a finding that the Commonwealth failed to prove beyond a reasonable doubt that the defendant was the individual who possessed the gun that caused the death of Rosendo Cruz. In light of the standard malice instruction that was given,

Instruction 14, the only way a rational juror could have acquitted the defendant of second degree murder was to have found a failure by the Commonwealth to prove the defendant was the gunman.

Therefore, the Defendant's motion will be granted in so far as the Commonwealth intends to prove that the defendant possessed a firearm on September 12, 2000, by showing that defendant was the person who possessed the firearm that killed Rosendo Cruz *and* that possession was at the time of the shooting of Rosendo Cruz.

If the Commonwealth intends to prove the elements of Indictment No. 3 by showing the defendant possessed a firearm on or about September 12, 2000, at a time other than when Rosendo Cruz was killed, they are free to proceed with the prosecution.

The Clerk is directed to send attested copies of this Opinion and Order to Marsha L. Garst, Esquire, Commonwealth Attorney of Rockingham County, and to John S. Hart, Jr., Esquire, counsel for the defendant.