COURT OF APPEALS OF VIRGINIA

Present:   Chief Judge Fitzpatrick, Judges Benton and Clements
Argued at Alexandria, Virginia


MARVIN DIRCEU MINAS URBINA

MEMORANDUM OPINION* BY

v.       Record No. 2467-02-4       JUDGE JAMES W. BENTON, JR.
                                    NOVEMBER 4, 2003

COMMONWEALTH OF VIRGINIA


FROM THE CIRCUIT COURT OF PRINCE WILLIAM COUNTY
LeRoy F. Millette, Jr., Judge

Glenn S. Wainer for appellant.

Steven A. Witmer, Assistant Attorney General (Jerry W. Kilgore,
Attorney General, on brief), for appellee.


The trial judge convicted Marvin Dirceu Minas Urbina of malicious wounding upon his

guilty plea.  Minas Urbina contends the trial judge erred because (1) the judge lacked jurisdiction to

convict him after vacating an earlier conviction, (2) the conviction order violated the Double

Jeopardy Clause of the Constitution, (3) the conviction order was predicated upon the

Commonwealth's breach of a plea agreement, and (4) the conviction order was entered in violation

of his right to a "speedy trial."  We affirm the conviction.

I.

On August 1, 2000, Minas Urbina pled guilty to malicious wounding in violation of Code

§ 18.2-51.  After making the appropriate inquiry, the trial judge accepted the plea, heard

evidence supporting the charge, convicted Minas Urbina of malicious wounding, and ordered a

pre-sentence report.  At the sentencing hearing, Minas Urbina's attorney represented to the judge

---

* Pursuant to Code § 17.1-413, this opinion is not designated for publication.

that Minas Urbina would be deported if convicted of a felony, and he made the following request:

> Mr. Wainer: . . . I would also like to point out that . . . Minas [Urbina] . . . is just a permanent resident. His whole family lives here and that under federal law . . . a person convicted of a felony is a deportable person, it's almost automatic.
>
> I would ask this Court to consider everything that's happened here. I think there are some good considerations here and before the Court does impose sentencing perhaps maybe it could structure a program that could fit Mr. Minas [Urbina] which possibly could entail some sort of community service, probation, boot camp, and education . . . before [you] enter a sentence on a guilty plea, Judge.
>
> [Judge]: You don't want me to sentence him? You want me to suspend an imposition so that he won't have a felony conviction; is that what you're saying?
>
> Mr. Wainer: That's correct, Judge.

The trial judge asked the attorney to address the deportation issue in a written submission. The judge continued the sentencing hearing without objection and released Minas Urbina on bail. In a memorandum, the attorney referenced various portions of the federal code, noted that a conviction on a felony charge would result in deportation, and described Minas Urbina's family circumstance. Based upon these considerations, he requested the judge to "suspend the imposition of sentence . . . or in the alternative . . . vacate [the] prior finding of guilty." At the sentencing hearing, the trial judge orally indicated he would vacate the previous finding of guilt, "suspend imposition of sentence" for a period of three years, order three years of supervised probation with special conditions, and continue the case until October 16, 2003. Without objection by Minas Urbina, the trial judge entered an order on January 31, 2001 vacating the "previous finding of guilty," imposing the conditions of good behavior and other requirements, and also finding, however, "that the facts in this case justify a finding of guilty."

Fourteen months after entry of this order, the police arrested Minas Urbina and charged him with several criminal law violations. The police also detained him on a warrant for violating the conditions of the January 31, 2001 order. Following an evidentiary hearing to determine whether Minas Urbina had violated the conditions of the January 31, 2001 order, the trial judge found that he did. By an order entered August 27, 2002, the trial judge convicted Minas Urbina of malicious wounding based upon the evidence at the August 1, 2000 hearing, sentenced him to five years in prison, suspended four years and six months of that sentence, and imposed a term of probation.

II.

Minas Urbina contends the January 31, 2001 order was a final order. He argues, therefore, that the August 2002 conviction order is void as a violation of Rule 1:1.

In pertinent part, Rule 1:1 provides that "[a]ll final judgments, orders, and decrees, irrespective of terms of court, shall remain under the control of the trial court and subject to be modified, vacated, or suspended for twenty-one days after the date of entry, and no longer." The principle is well settled that "'[a] final order is one which disposes of the whole subject, gives all the relief contemplated, provides with reasonable completeness for giving effect to the sentence, and leaves nothing to be done in the cause save to superintend ministerially the execution of the order.'" Daniels v. Truck & Equip. Corp., 205 Va. 579, 585, 139 S.E.2d 31, 35 (1964) (citations omitted). These principles apply in a criminal case. Davidson v. Commonwealth, 246 Va. 168, 171, 432 S.E.2d 178, 180 (1993) (holding that an order is "a final order . . . [when it is] a disposition of the whole subject before the court"). In short, the final order in a criminal proceeding is generally the order sentencing a defendant in some manner after a finding of guilt. In re Dept. of Corrections, 222 Va. 454, 463, 281 S.E.2d 857, 862 (1981). See also Fuller v. Commonwealth, 189 Va. 327, 332, 53 S.E.2d 26, 28 (1949) (holding that a trial judge "has made

- 3 -

a complete disposition of the case within the purview of the statute" when he has adjudged the defendant "guilty" and sentenced him); Patterson v. Commonwealth, 39 Va. App. 610, 614, 575 S.E.2d 583, 585 (2003) (noting that the sentencing order following a conviction was the final order); D'Alessandro v. Commonwealth, 15 Va. App. 163, 167, 423 S.E.2d 199, 201 (1992) (holding that "the sentencing order [that follows a finding of guilt] . . . is the final judgment").

Prior to sentencing Minas Urbina upon his August 1, 2000 guilty plea, the trial judge entered the January 31, 2001 order, which vacated the conviction, continued the proceeding to a specific date, and retained jurisdiction over this matter. The January 31, 2001 order did not adjudicate Minas Urbina "guilty" of a criminal offense and did not sentence him for a criminal violation. Thus, it was not a "final disposition" of the matter. Indeed, when Minas Urbina was brought before the circuit court in August 2002, the original criminal proceeding on the malicious wounding charge remained pending pursuant to the express terms of the January 31, 2001 order. Because no final order had previously been entered, Rule 1:1 did not cause the trial judge to lose jurisdiction over the proceeding.

Minas Urbina also challenges the manner in which the trial judge structured the January 31, 2001 order. He asserts that "[a]lthough the Judge stated from the bench that he was going to 'suspend the imposition of sentence' . . . , he failed to do so." Minas Urbina argues that, therefore, "[b]ecause the court . . . did not see fit to sentence [him] to a term of incarceration or, did not see fit to suspend imposition of sentence, the court was without jurisdiction [in August 2002] to modify, suspend or vacate the order of January 31, 2001." This argument lacks merit.

As we indicated in Part I of this opinion, the trial judge structured his order in response to Minas Urbina's attorney's plea to give Minas Urbina a chance to rehabilitate himself and to avoid deportation. To emphasize the specific focus of the attorney's request, we repeat the following dialogue:

[Judge]: You don't want me to sentence him? You want me to suspend an imposition so that he won't have a felony conviction; is that what you're saying?

Mr. Wainer: That's correct judge.

The trial judge could not suspend imposition of sentence unless he had first convicted Minas Urbina, a result his attorney asked the judge to avoid. See Code § 19.2-303 ("After conviction, . . . the court may suspend imposition of sentence[.]"). Moreover, the principle is well established that "[n]o litigant, even a defendant in a criminal case, will be permitted to approbate and reprobate -- to invite error . . . and then to take advantage of the situation created by his own wrong." Fisher v. Commonwealth, 236 Va. 403, 417, 374 S.E.2d 46, 54 (1988). We have applied this principle when holding that "[a] party may not invite error and subsequently raise that error as a grounds for appeal." Batts v. Commonwealth, 30 Va. App. 1, 11, 515 S.E.2d 307, 312 (1999). Accordingly, we hold that Minas Urbina cannot now challenge as reversible error the judge's decision to proceed in a manner that did not involve suspension of the imposition of a sentence. Having asked the trial judge to avoid convicting him of a felony, Minas Urbina will "not be allowed to assume an inconsistent position" by arguing that the judge erred in responding favorably to his request. Clark v. Commonwealth, 220 Va. 201, 214, 247 S.E.2d 784, 792 (1979).

III.

Minas Urbina also contends that the August 2002 conviction order violated the Double Jeopardy Clause of the Fifth Amendment. Because he never presented this argument to the trial judge, Rule 5A:18 bars our consideration of this question on appeal. "The Court of Appeals will not consider an argument on appeal which was not presented to the trial court." Ohree v. Commonwealth, 26 Va. App. 299, 308, 494 S.E.2d 484, 488 (1998). Moreover, the record does not reflect any reason to invoke the good cause or ends of justice exceptions to Rule 5A:18.

IV.

Minas Urbina contends the Commonwealth violated a plea agreement when it sought to prove he violated the conditions of the January 31, 2001 order. This contention lacks merit.

At the August 2002 hearing, a probation officer testified about Minas Urbina's violations of the conditions of the January 31, 2001 order. In addition, a police officer testified that he found a handgun in a car between the seats occupied by Minas Urbina and his brother and that Minas Urbina admitted he owned the firearm and had traveled to Washington, D.C. to purchase it. Both men were charged with firearm offenses. At the hearing, Minas Urbina argued that the prosecutor entered into a plea agreement with his brother and "agreed not to pursue charges or otherwise prosecute" Minas Urbina in exchange for his brother's guilty plea. The prosecutor represented, however, that Minas Urbina's brother's plea agreement provided that the Commonwealth would not institute a criminal prosecution against Minas Urbina for that event. The prosecutor also represented that the agreement did not bar the Commonwealth from introducing evidence of Minas Urbina's proximity to the firearm to show Minas Urbina did not abide by the conditions of the January 31, 2001 order. The trial judge accepted that representation. The plea agreement was not entered into evidence.

Minas Urbina's brother testified that he found the handgun near a soccer field and Minas Urbina knew nothing about the handgun. At the conclusion of the evidence, the trial judge found that the brother's testimony was not credible. The trial judge also believed the officer's testimony and found that Minas Urbina possessed the firearm and traveled outside of Virginia without permission, both of which violated the terms of the January 31, 2001 order. Because the evidence did not prove the Commonwealth was barred from producing evidence of Minas Urbina's possession of the firearm to show a violation of the conditions of the January 31 order, we hold that the trial judge did not err in accepting the evidence.

Minas Urbina also contends that res judicata and collateral estoppel precluded the Commonwealth from introducing evidence of the firearm at Minas Urbina's revocation hearing. We disagree.

The doctrine of collateral estoppel provides that "when an issue of ultimate fact has once been determined by a valid and final judgment [against the party to whom the doctrine is sought to be applied], that issue cannot again be litigated between the same parties in any future lawsuit." Ashe v. Swenson, 397 U.S. 436, 443 (1970). See also Sevachko v. Commonwealth, 35 Va. App. 346, 352, 544 S.E.2d 898, 901 (2001) (holding that "[c]ollateral estoppel is a doctrine of fact preclusion"). The broader doctrine of res judicata "' precludes [the] relitigation of a claim or issue once a final determination on the merits has been reached by a court of competent jurisdiction.'" Neff v. Commonwealth, 39 Va. App. 13, 18, 569 S.E.2d 72, 74 (2002) (citation omitted).

The record does not contain any indication that the plea agreement established a factual finding that Minas Urbina's brother had sole and exclusive possession of the firearm. "Possession need not be exclusive and, in fact, may be joint possession with others." Hamilton v. Commonwealth, 16 Va. App. 751, 755, 433 S.E.2d 27, 29 (1993). Thus, an item "found on the seat of [a vehicle] between the defendant and [another, may be said to be] . . . found in what clearly appeared to be an exclusive joint possession of both occupants." Quivers v. Commonwealth, 135 Va. 671, 676, 115 S.E. 564, 565 (1923). See also Carter v. Commonwealth, 209 Va. 317, 323, 163 S.E.2d 589, 594 (1968) (holding that "exclusive possession includes joint possession by two or more persons"). Moreover, because there has been no finding that Minas Urbina did not jointly possess the gun with his brother, res judicata did not bar the trial judge's finding in this proceeding. Accordingly, we hold that the trial judge did not err.

V.

Requesting that we apply the ends of justice exception to Rule 5A:18, Minas Urbina contends the Commonwealth failed to commence the trial within nine months in violation of Code § 19.2-243 and Article I, Section 8 of the Virginia Constitution.

"[T]he ends of justice exception is narrow and is to be used sparingly." Brown v. Commonwealth, 8 Va. App. 126, 132, 380 S.E.2d 8, 11 (1989). "In order to avail oneself of the [ends of justice] exception, a defendant must affirmatively show that a miscarriage of justice has occurred, not that a miscarriage might have occurred." Redman v. Commonwealth, 25 Va. App. 215, 221, 487 S.E.2d 269, 272 (1997).

"The protection granted an accused under [Virginia's speedy trial statute] is not self-operative. 'It may be claimed, or it may be waived.' Failure to invoke the provisions of the statute until after final judgment is a waiver of the protection afforded thereunder." Brooks v. Peyton, 210 Va. 318, 321, 171 S.E.2d 243, 246 (1969) (citations omitted). Minas Urbina failed to invoke his statutory right to a speedy trial in the trial court. In addition, he specifically requested the trial judge to provide the relief he now seeks to overturn. When the trial judge vacated the August 2000 conviction and continued the proceeding until October 16, 2003, Minas Urbina did not object and agreed to the procedure and, necessarily, the delay. Thus, he has failed to affirmatively show that a miscarriage of justice occurred and has provided an insufficient basis to invoke the ends of justice exception to Rule 5A:18.

For these reasons, we affirm the conviction.

Affirmed.