## Richmond

### JOHN WILLIAM RHODES, IV

### V.

### COMMONWEALTH OF VIRGINIA

June 18, 1982.

Record No. 810412.

Present: All the Justices.

*J. Ronald Lynch* for appellant.
*Linwood T. Wells, Jr., Assistant Attorney General (Gerald L. Baliles, Attorney General,* on brief), for appellee.

RUSSELL, J., delivered the opinion of the Court.

The question presented in this case is whether the doctrine of collateral estoppel bars the Commonwealth from presenting, in a criminal case, evidence underlying another offense of which the defendant had previously been acquitted.

On September 15, 1978, members of the Narcotics Investigation Section of the Virginia State Police began to investigate the suspected manufacture of phencyclidine (PCP) in Prince William County. Trooper M. J. Ritchie followed the defendant and a companion while other members of the investigation team kept under surveillance a farmhouse owned by the defendant's parents in the northern part of the county. Trooper Ritchie observed the defendant and his companion enter a store where the defendant purchased a long stirring spoon and his companion purchased seven plastic buckets. He then followed the pair to the farmhouse. The investigation team found a number of items commonly used in the manufacture of PCP in the woods surrounding the house. Some of the items contained residues of chemicals used in the manufacture of PCP. The troopers also noticed that a distinctive odor associated with the manufacture of PCP was emanating from the general direction of the house. The troopers kept watch on the house

from the nearby woods throughout that day and night, and into the following day.

In the late afternoon of September 16th, Trooper S. E. Gray observed the defendant and another man walking toward an old Chrysler which was one of six or seven apparently disused or abandoned vehicles parked around the house. When the defendant opened the Chrysler's trunk, the odor of PCP became extremely strong. Both men leaned into the trunk and appeared to be examining the contents. After a short time they closed the trunk lid and walked out of the trooper's view. Shortly thereafter the trooper heard another trunk or door slam, and saw the defendant reappear, carrying a white object which the trooper could not identify. The defendant then entered a yellow Ford Mustang. The trooper heard the defendant's companion say "Be careful, Bear," (using the defendant's nickname). The defendant left the premises in the Mustang and drove south on Route 15 toward Haymarket.

Trooper Gray immediately made radio contact with Trooper R. A. Dyer, who was driving north on Route 15, armed with a search warrant for the farmhouse, and informed him of the defendant's movements. Dyer intercepted the defendant at a truck stop near Haymarket. When he stopped the defendant, another man and a young woman were also in the Mustang. Dyer detected an odor of PCP emanating from the car. He found a plastic bag containing cigarettes dipped in a liquid, which was still wet, on the "hump" between the Mustang's bucket seats. The cigarettes appeared to be the source of the odor. Chemical analysis later established the fact that the cigarettes had been dipped in liquid PCP.

When the Troopers executed the search warrant, they found many articles used in the manufacture of PCP in the derelict vehicles around the farmhouse. Some bore the defendant's fingerprints. They also found various chemicals used in the PCP manufacturing process, as well as 30 grams of finished PCP.

The Grand Jury, on June 4, 1979, returned two indictments against the defendant, one charging him with the manufacture of PCP and the other charging him with the possession of PCP. On the defendant's motion, the court severed the two charges for separate trials. The possession case was tried first, by jury, on April 17, 1980. The Commonwealth's evidence in support of the indictment was based upon Trooper Dyer's discovery of the PCP-soaked cigarettes which he found on the "hump" between the seats of the

defendant's Mustang when he stopped it near Haymarket. The jury found the defendant "Not Guilty" of possession.

The manufacturing charge was tried by jury on July 30, 1980. The Commonwealth's evidence in support of this indictment was based on the defendant's alleged participation in the manufacturing activities at the farmhouse. Since no witness had seen him manufacture PCP, the proof was entirely circumstantial. The defendant made a motion *in limine* to prohibit the Commonwealth from introducing any evidence concerning his arrest near Haymarket by Trooper Dyer, and the discovery of the PCP-soaked cigarettes in his car. He based his motion upon the ground that he had previously been acquitted of the possession of those items. The Commonwealth conceded that it was barred from asserting in the manufacturing case that the defendant was in possession of the cigarettes. However, it contended that the presence of the cigarettes, still wet with PCP, in the defendant's car, was a circumstance which the jury should consider because it tended to show his association with the manufacturing process at the farmhouse.

The defendant's motion was denied and the Commonwealth introduced Trooper Dyer's testimony concerning the defendant's apprehension and the discovery of the cigarettes. Evidence was also introduced concerning the activities at the farmhouse and the items found when the search warrant was executed. Expert testimony of a forensic chemist identified the substances found and related the steps necessary for the manufacture of PCP. The jury found the defendant guilty of the manufacture of PCP and fixed his punishment at 20 years in the penitentiary and a $25,000 fine. Judgment was entered on the verdict.

We granted an appeal limited to the defendant's contention that during the trial of the manufacturing case, the court erred in allowing into evidence testimony concerning the presence of the PCP-soaked cigarettes found in his car. The defendant argues that the Commonwealth should have been collaterally estopped from using such evidence in the subsequent prosecution for manufacturing because the same evidence had been introduced during the trial of the possession charge of which the defendant had been acquitted.

In criminal cases, collateral estoppel is a doctrine grounded in the Fifth Amendment guarantee against double jeopardy. *Lee* v. *Commonwealth,* 219 Va. 1108, 1110, 254 S.E.2d 126,

127 (1979). In *Turner* v. *Commonwealth,* 221 Va. 513, 529, 273 S.E.2d 36, 46 (1980), we enumerated the three separate guarantees contained in the double jeopardy clause: protection against a second prosecution for the offense after acquittal, protection against a second prosecution for the same offense after conviction, and protection against multiple punishments for the same offense. The test for a violation of the latter guarantee is whether each offense requires, for conviction, proof of a fact which the other does not. *Blockburger* v. *U.S.,* 284 U.S. 299, 304 (1932). The question presented here is unaffected by the three constitutional guarantees. The defendant was not, in the manufacturing case, on trial for the crime of possession of the PCP found in his car. Possession and manufacturing are two separate and distinct offenses, each of which requires proof of a fact which the other does not. Further, since the possession charge was based upon evidence of the defendant's alleged association with the PCP-soaked cigarettes at a time and place different from the scene of the manufacturing activities at the farmhouse, the possession charge was not a lesser-included offense within the manufacturing charge. *Compare Jones* v. *Commonwealth,* 218 Va. 757, 240 S.E.2d 658, *cert. denied,* 435 U.S. 909 (1978).[1]

In *Ashe* v. *Swenson,* 397 U.S. 436, 443 (1970), the United States Supreme Court defined the term:

> "Collateral estoppel" is an awkward phrase, but it stands for an extremely important principle in our adversary system of justice. It means simply that when a[n] issue of *ultimate fact* has once been determined by a valid and final judgment, that issue cannot again be litigated between the same parties in any future lawsuit.

The Court also established these guidelines for determining whether the rule of collateral estoppel applies in a given case.

> Where a previous judgment of acquittal was based upon a *general verdict,* as is usually the case, this approach requires a court to "examine the record of a prior proceeding, taking into account the pleadings, evidence, charge, and other rele-

---

[1] The present case is to be distinguished from one in which a defendant, accused of the manufacture or distribution of controlled drugs, is also charged with possession of the same drugs, at the same time and place.

vant matter, and conclude whether a rational jury could have grounded its verdict upon an issue other than that which the defendant seeks to foreclose from consideration."

*Id.* at 444. In the further application of this rule, we held in *Clodfelter* v. *Commonwealth,* 218 Va. 98, 106, 235 S.E.2d 340, 345, *rev'd. on other grounds,* 218 Va. 619, 238 S.E.2d 820 (1977), that "[t]he party seeking the protection of collateral estoppel has the burden of proving that the precise issue or question he seeks to preclude was raised and determined in the first action."

We applied the *Ashe* rule in *Simon* v. *Commonwealth,* 220 Va. 412, 258 S.E.2d 567 (1979), and held that an acquittal in a prior trial precluded the Commonwealth from offering evidence in a subsequent trial upon any issue of fact which had been necessarily decided by the acquittal. There, the defendant had been prosecuted previously for driving while under the influence of alcohol. The ultimate issue of fact therein decided was whether the defendant was legally intoxicated. The defendant was acquitted of that offense. When he was later prosecuted for involuntary manslaughter, we held that the Commonwealth was collaterally estopped from offering evidence of this ultimate fact. However, noting that *Ashe* had focused upon the relitigation of issues of ultimate fact, we held that the Commonwealth was not precluded, in a subsequent trial, from presenting evidence of the subsidiary fact that the defendant had been drinking at the time of the alleged manslaughter.[2]

Applying these principles to the case at bar, it is clear that the sole ultimate fact determined by the jury's general verdict in the possession trial was that the defendant was not guilty of the unlawful possession of the PCP-soaked cigarettes. However, there is no indication in the record that the jury based its verdict on the subsidiary fact that the PCP was not present in the defendant's car, that being the precise issue of fact which the defendant seeks to foreclose from consideration as a part of the evidence in the manufacturing case. On the contrary, the jury may have based its acquittal upon its inability to find, beyond a reasonable doubt, that the defendant had custody or control of the cigarettes, either

---

[2] A level of intoxication lower than that required for a conviction of driving under the influence had been held relevant to the question of criminal negligence in *Beck* v. *Commonwealth,* 216 Va. 1, 5, 216 S.E.2d 8, 10 (1975).

alone or jointly with the other occupants of the car, who joined him after he left the farmhouse. The jury may have accepted, as an hypothesis of innocence, that these other occupants introduced the cigarettes into the car without the defendant's participation. The jury might also have believed that the cigarettes had been introduced into the car by others at the farmhouse without the defendant's knowledge, or that if he knew of their presence he was unaware of the fact that they were impregnated with PCP.

The defendant is manifestly unable to demonstrate that the jury acquitted him of possession because it disbelieved the evidence of Trooper Dyer when he testified that he found the cigarettes in the Mustang. The presence of the cigarettes, a subsidiary fact, therefore remains unfettered by the doctrine of collateral estoppel. It remains as available to the Commonwealth as any of the other evidence of the surrounding circumstances, if it is probative and relevant to the issues to be decided in the manufacturing case.

Here, there was overwhelming circumstantial evidence that a facility for the manufacture of PCP had previously been in operation in the derelict vehicles around the farmhouse, and that a stockpile of equipment and ingredients was stored there for future operations. However, there was no direct evidence of the defendant's participation in the actual manufacturing activities, nor was there direct proof that such operations were in progress during the time of his presence. Unless the Commonwealth could produce evidence of the defendant's participation in the manufacturing process, it could do little more than bring him to trial as an accessory before the fact, based upon the rather tenuous argument that he purchased a long stirring spoon and brought it to the premises.

Expert testimony indicated that although PCP could be ingested in various ways, the present "vogue" was to sprinkle it in liquid form on plant materials, such as parsley or marijuana, which were then dried in order that they might be smoked. PCP in liquid form, therefore, would ordinarily be found only in connection with a manufacturing operation. It was accordingly relevant, as circumstantial evidence of the defendant's actual participation in the manufacturing process, to show that the cigarettes, still wet with liquid PCP because it had not yet had an opportunity to dry, were found in his car a few minutes after he left the scene of the alleged manufacture. The presence of the PCP-soaked cigarettes was relevant because it tended to show the de-

fendant's propinquity, in time and place, to the actual manufacturing operations.

The defendant, in his brief and oral argument, complained of the trial court's refusal to permit him to show the jury, in the manufacturing case, that he had been tried and acquitted of possession. No error was assigned to this ruling in the petition for appeal, however, and we are precluded from considering it by Rule 5:21.

Finding no error in the trial court's admission of the disputed evidence, we will affirm the judgment.

*Affirmed.*