PUBLISHED

# VIRGINIA:

*In the Court of Appeals of Virginia on* **Tuesday** *the* **21st** *day of* **October, 2014**.

Ronald Taft Davis, III,                                                                                    Appellant,

against          Record No. 1873-12-2
                     Circuit Court Nos. CR08093 and CR10025

Commonwealth of Virginia,                                                                          Appellee.

Upon Rehearing En Banc

Before Chief Judge Felton, Judges Frank, Humphreys, Kelsey, Petty, Beales, Alston,
McCullough, Huff, Chafin and Decker

Charles C. Cosby, Jr. (Lawrence A. Drombetta, III, on brief), for appellant.

Eugene Murphy, Senior Assistant Attorney General (Mark R. Herring,
Attorney General, on brief), for appellee.

On February 25, 2014, a panel of this Court reversed the judgment of the trial court and dismissed the felony indictments against Ronald Taft Davis, III. See Davis v. Commonwealth, 63 Va. App. 45, 754 S.E.2d 533 (2014). A dissenting opinion was filed in the panel decision. We subsequently granted the Commonwealth's petition for rehearing *en banc*, stayed the mandate of the panel decision, and reinstated the appeal on the docket of this Court.

Upon such rehearing *en banc*, the stay of this Court's February 25, 2014 mandate is lifted, the judgment of the trial court is reversed, and the felony indictments are dismissed for the reasons stated in the panel's majority opinion.

Chief Judge Felton, Judges Frank, Humphreys, Petty, Alston, Huff, Chafin, and Decker voted to reverse the judgment of the trial court and dismiss the felony indictments in accordance with the majority opinion of the panel.

Judges Kelsey, Beales, and McCullough voted to affirm the judgment of the trial court for the reasons stated in the dissenting opinion of the original panel decision.

It is ordered that the trial court allow Charles C. Cosby, Jr., Esquire, court-appointed counsel for the appellant, an additional fee of $200 for services rendered the appellant on the rehearing portion of this appeal, in addition to counsel's costs and necessary direct out-of-pocket expenses.

Further, the matter is remanded to the Circuit Court of Surry County for the sole purpose of amending its records to show the correct offense description of attempted capital murder. See id. at 48 n.1, 754 S.E.2d at 535 n.1.

This order shall be published and certified to the trial court.

A Copy,

Teste:

Cynthia L. McCoy, Clerk

By: *original order signed by a deputy clerk of the Court of Appeals of Virginia at the direction of the Court*

Deputy Clerk

*VIRGINIA:*

PUBLISHED

*In the Court of Appeals of Virginia on* **Tuesday** *the* **25th** *day of* **March, 2014**.

Ronald Taft Davis, III, Appellant,

  against          Record No. 1873-12-2
                     Circuit Court Nos. CR08093 and CR10025

Commonwealth of Virginia, Appellee.

Upon a Petition for Rehearing En Banc

Before the Full Court

On March 11, 2014 came the appellee, by the Attorney General of Virginia, and filed a petition requesting that the Court set aside the judgment rendered herein on February 25, 2014, and grant a rehearing *en banc* on the issue(s) raised in the petition.

On consideration whereof, the petition for rehearing *en banc* is granted with regard to the issue(s) raised therein, the mandate entered herein on February 25, 2014 is stayed pending the decision of the Court *en banc*, and the appeal is reinstated on the docket of this Court.

The parties shall file briefs in compliance with Rule 5A:35(b). The appellant shall attach as an addendum to the opening brief upon rehearing *en banc* a copy of the opinion previously rendered by the Court in this matter. It is further ordered that the appellee shall file twelve additional copies of the appendix previously filed in this case. In addition, any party represented by counsel shall file twelve electronic copies of their brief (and the appendix, if the party filing the appendix is represented by counsel) with the clerk of this Court.

The electronic copies must be filed on twelve separate CDs or DVDs and must be filed in Adobe Acrobat Portable Document Format (PDF).[1]

A Copy,

Teste:

Cynthia L. McCoy, Clerk

By:  *original order signed by a deputy clerk of the Court of Appeals of Virginia at the direction of the Court*

Deputy Clerk

---

[1]  The guidelines for the creation and submission of a digital brief package can be found at www.courts.state.va.us, in the Court of Appeals section under "Resources and Reference Materials."

Present:  Judges Petty, Beales and Chafin
Argued at Richmond, Virginia


RONALD TAFT DAVIS, III

OPINION BY
v.       Record No. 1873-12-2            JUDGE WILLIAM G. PETTY
FEBRUARY 25, 2014

COMMONWEALTH OF VIRGINIA


FROM THE CIRCUIT COURT OF SURRY COUNTY
W. Allan Sharrett, Judge

Charles C. Cosby, Jr. (Lawrence A. Drombetta, III, on brief), for
appellant.

Eugene Murphy, Senior Assistant Attorney General (Kenneth T.
Cuccinelli, II, Attorney General, on brief), for appellee.


Ronald Taft Davis, III, appeals his convictions of first-degree murder and attempted

first-degree murder.[1]  On appeal, Davis argues:  (1) the trial court erred in denying his motion for

collateral estoppel to bar prosecution of the charges due to his acquittal on the charge of reckless

handling of a firearm; (2) the trial court erred in not granting his motion for a mistrial after the

Commonwealth's Attorney mentioned Davis's invocation of his Miranda rights during both

opening statements and direct examination of law enforcement; and (3) the trial court erred in

denying Davis's motion for mistrial after a witness testified that Davis had a criminal charge for

---

[1] Davis was originally indicted for attempted murder, murder, use of a firearm in the
commission of attempted capital murder, and two counts of attempted capital murder
(erroneously listed as two counts of capital murder on the amended order of conviction dated
June 27, 2012).  Prior to the trial, the Commonwealth's Attorney moved to *nolle prosequi* the
indictments for attempted murder and one of the counts of attempted capital murder.  The jury
found Davis guilty of first-degree murder and attempted first-degree murder and found him not
guilty of use of a firearm in the commission of attempted capital murder.

which he received a two-year sentence. For the following reasons, we reverse the judgment of the trial court.[2]

## I. BACKGROUND

"On appeal, 'we review the evidence in the light most favorable to the Commonwealth, granting to it all reasonable inferences fairly deducible therefrom.'" Archer v. Commonwealth, 26 Va. App. 1, 11, 492 S.E.2d 826, 831 (1997) (quoting Martin v. Commonwealth, 4 Va. App. 438, 443, 358 S.E.2d 415, 418 (1987)). Furthermore, collateral estoppel is a legal doctrine "grounded in the Fifth Amendment guarantee against double jeopardy." Rhodes v. Commonwealth, 223 Va. 743, 747, 292 S.E.2d 373, 375 (1982). Therefore, we apply the *de novo* standard of review applicable to double jeopardy claims to determine whether collateral estoppel applies. See Davis v. Commonwealth, 57 Va. App. 446, 455, 703 S.E.2d 259, 263 (2011).

On November 16, 2008, Davis was arrested and charged with shooting into an occupied vehicle, first-degree murder, use of a firearm during the commission of murder, and reckless handling of a firearm.[3] The charges arose from an altercation during which Davis allegedly fired ten or more bullets into an occupied car parked outside a nightclub. A passenger of the car was killed as a result of the shooting. On December 16, 2008, the General District Court of Surry County conducted a preliminary hearing on the felonies. During the course of the preliminary hearing, the district court judge realized that there was a pending misdemeanor charge of

---

[2] Because we hold that the Commonwealth is collaterally estopped from prosecuting Davis on the felony charges, we need not consider Davis's second and third assignments of error.

[3] The arrest warrants for these charges were obtained by Surry County Deputy Sheriff R.L. Sears without any apparent consultation with the Commonwealth's Attorney.

reckless handling of a firearm[4] arising from the same incident. The Commonwealth's Attorney advised the judge that it was his intention to proceed to try the misdemeanor concurrently with the preliminary hearing on the felonies; Davis then entered a plea of not guilty to the misdemeanor charge. At the conclusion of the Commonwealth's evidence at the preliminary hearing, the judge dismissed the misdemeanor reckless handling of a firearm charge and the felonies were not certified. The judge noted,

> On the issue of probable cause, clearly the Commonwealth has met its burden as to whether a felony was committed or not—felonies. On the issue of whether or not [the Commonwealth's Attorney has] shown it reasonable to believe Mr. Davis was the one that fired the weapon, I find that you have not met that burden, and I find no probable cause.
> On the misdemeanor charge as to whether or not [the Commonwealth's Attorney has] proven the case beyond a reasonable doubt, I would find that you have not. I'm going to find him not guilty of that charge.

The Commonwealth then obtained direct indictments against Davis for the felonies of attempted murder, murder, use of a firearm in the commission of an attempted capital murder, and two counts of attempted capital murder. Davis made a motion to the circuit court to dismiss those indictments based on the doctrine of collateral estoppel.[5] The circuit court denied the motion, noting that the judgment of acquittal on the misdemeanor reckless handling of a firearm charge was based on a general verdict.[6] The circuit court stated that the district court order did not specify which element of the offense was not proved beyond a reasonable doubt and "merely placed a checkmark in the printed square on the reverse side of the warrant designated, 'not

---

[4] Code § 18.2-56.1 provides, "It shall be unlawful for any person to handle recklessly any firearm so as to endanger the life, limb or property of any person. Any person violating this section shall be guilty of a Class 1 misdemeanor."

[5] A transcript of the preliminary hearing and a copy of the misdemeanor warrant were introduced into evidence in the circuit court during the hearing on the motion to dismiss.

[6] A general verdict is one "by which the jury finds in favor of one party or the other, as opposed to resolving specific fact questions." Black's Law Dictionary 1696 (9th ed. 2009).

guilty' and 'I ORDER the charge dismissed.'"[7]  Thus, the Commonwealth proceeded with the

prosecution of Davis on the felonies in the circuit court.  Following the trial, Davis was

convicted of first-degree murder and attempted first-degree murder.

## II. ANALYSIS

Davis argues that the trial court erred in denying his motion to dismiss both felonies

because his acquittal on the reckless handling of a firearm charge collaterally estopped the

Commonwealth from prosecuting him on the felonies involving the use of a firearm.  We agree.

Collateral estoppel is a preclusion doctrine "grounded in the Fifth Amendment guarantee

against double jeopardy."  Rhodes, 223 Va. at 747, 292 S.E.2d at 375.[8]  "It stands for [the]

---

[7] While the district court did not have jurisdiction to enter final judgment on the felony charges, it is without question that it did have jurisdiction to do so on the misdemeanor offense. See Code § 16.1-123.1(1).

[8] The dissent argues that "this case is largely about the proper limits of judicial power." In reality, the protections afforded by the Double Jeopardy Clause of the Fifth Amendment, and the principle of collateral estoppel embodied in that guarantee, serve as a limit on prosecutorial abuses by the government.

> The underlying idea, one that is deeply ingrained in at least the Anglo-American system of jurisprudence, is that the State with all its resources and power should not be allowed to make repeated attempts to convict an individual for an alleged offense, thereby subjecting him to embarrassment, expense and ordeal and compelling him to live in a continuing state of anxiety and insecurity, as well as enhancing the possibility that even though innocent he may be found guilty.

Green v. United States, 355 U.S. 184, 187-88 (1957).  Justice Oliver Wendell Holmes wrote of the principle,

> The safeguard provided by the Constitution against the gravest abuses has tended to give the impression that when it did not apply in terms, there was no other principle that could.  But the Fifth Amendment was not intended to do away with . . . a fundamental principle of justice, in order, when a man once has been acquitted on the merits, to enable the Government to prosecute him a second time.

United States v. Oppenheimer, 242 U.S. 85, 88 (1916) (citation omitted).

- 4 -

extremely important principle in our adversary system of justice . . . that when an issue of ultimate fact has once been determined by a valid and final judgment, that issue cannot again be litigated between the same parties in any future lawsuit."[9] Ashe v. Swenson, 397 U.S. 436, 443 (1970). Furthermore, "[t]he party seeking the protection of collateral estoppel carries the burden of showing that the verdict in the prior action necessarily decided the precise issue he seeks to now preclude." Rhodes, 223 Va. at 749, 292 S.E.2d at 376. However, "[t]he doctrine . . . does not apply if it appears that the prior judgment could have been grounded 'upon an issue other than that which the defendant seeks to foreclose from consideration.'" Lee v. Commonwealth, 219 Va. 1108, 1111, 254 S.E.2d 126, 127 (1979) (quoting Ashe, 397 U.S. at 444). "Collateral estoppel becomes applicable only when the prior acquittal necessarily resolved the issue now in litigation." Simon v. Commonwealth, 220 Va. 412, 418, 258 S.E.2d 567, 571 (1979).[10]

As the Supreme Court stated in Jones v. Commonwealth, 217 Va. 231, 228 S.E.2d 127 (1979),

> Ashe requires that the question whether the rule of collateral estoppel applies in a given case is to be approached "with realism and rationality." The Court established these guidelines: "Where a previous judgment of acquittal was based upon a general verdict, as is usually the case, this [realistic and rational] approach requires

---

[9] The dissent cites Standefer v. United States, 447 U.S. 10 (1980), in its argument that Davis's acquittal on the misdemeanor charge should not preclude his prosecution on the felony charges. Standefer, however, involved a very different issue – "whether a defendant accused of aiding and abetting in the commission of a federal offense may be convicted after the named principal has been acquitted of that offense." Id. at 11. The language quoted by the dissent is the Court's rationale for refusing to *extend* the doctrine of collateral estoppel to situations where there is no mutuality of parties; it is not a justification for ignoring the long recognized doctrine when, as here, mutuality clearly exists.

[10] It is clear that Davis's trial for murder and attempted murder was subsequent to, and not concurrent with, his prosecution for reckless handling of a firearm. While the same charges were heard at the preliminary hearing, they were dismissed by the district court. Thus, the subsequent indictments in the circuit court constituted a new and separate prosecution. See Wright v. Commonwealth, 52 Va. App. 690, 701, 667 S.E.2d 787, 792 (2008) (en banc) (recognizing that when an original charge is terminated in the district court, a new indictment for the same offense is a new charge, distinct from the original charge).

- 5 -

a court to 'examine the record of a prior proceeding, taking into account the pleadings, evidence, charge, and other relevant matter, and conclude whether a rational jury could have grounded its verdict upon an issue other than that which the defendant seeks to foreclose from consideration.'"

Id. at 233, 228 S.E.2d at 129 (alteration in original) (quoting Ashe, 379 U.S. at 444).

Furthermore,

[t]he inquiry "must be set in a practical frame and viewed with an eye to all the circumstances of the proceedings." Any test more technically restrictive would, of course, simply amount to a rejection of the rule of collateral estoppel in criminal proceedings, at least in every case where the first judgment was based on a general verdict of acquittal.

Ashe, 379 U.S. at 444 (quoting Sealfon v. United States, 332 U.S. 575, 579 (1948)).

We find the Supreme Court's decision in Lee controlling in this case. In that case, Lee was acquitted for a misdemeanor driving under a revoked license charge, while two felony charges—manslaughter and hit-and-run—were certified to trial. 219 Va. at 1109, 254 S.E.2d at 126. At the trial on the felonies, the parties stipulated that the prior acquittal rested on the Commonwealth's failure to prove that Lee had operated his vehicle on the day in question, an ultimate fact on all three charges. Id. at 1110, 254 S.E.2d at 127. In determining whether collateral estoppel precluded trial on the felonies, the Court analogized the United States Supreme Court's decision in Ashe, noting, "Here, . . . it appears from the express language of the stipulation that the judgment of dismissal, like the jury's verdict in Ashe, was based on insufficiency of the evidence [that Lee operated his vehicle on the day in question], the particular ground assigned by defendant in his motion to dismiss." Id. at 1111, 254 S.E.2d at 127. Therefore, the Court held that a judgment of dismissal of the misdemeanor warrant of driving under a revoked license collaterally estopped the Commonwealth from prosecuting Lee for manslaughter and hit-and-run driving. Id.

Here, Davis was convicted of two felonies—first-degree murder and attempted capital murder—*after* the district court dismissed the misdemeanor charge of reckless handling of a firearm.[11] While there was no stipulation in this case, the judge announced his factual finding that the Commonwealth had not "shown it reasonable to believe Mr. Davis was the one that fired the weapon." Furthermore, the district court judge's very next statement was that he was dismissing the misdemeanor charge because the Commonwealth had not proved its case beyond a reasonable doubt with respect to that charge. The Commonwealth's evidence established that only one person fired the weapon. Thus, from the district court judge's stated factual finding that Davis did not fire the weapon, the only rational conclusion that can be drawn is that the acquittal was based on the Commonwealth's failure to prove "that the defendant was the criminal agent, an essential element [of all] of the offenses." Woodfin v. Commonwealth, 236 Va. 89, 95, 372 S.E.2d 377, 381 (1988).

Moreover, to the extent the verdict noted on the back of the warrant for arrest was a general verdict, we are required to "'examine the record of a prior proceeding, taking into account the pleadings, evidence, charge, and other relevant matter, and conclude whether a rational [trier of fact] could have grounded its verdict upon an issue other than that which the defendant seeks to foreclose from consideration.'" Jones, 217 Va. at 233, 228 S.E.2d at 129 (quoting Ashe, 379 U.S. at 444).

The Commonwealth offered testimony of four witnesses. Of those four witnesses' testimony, not one actually saw Davis shoot, or even handle, a gun on the night of the shooting. The most incriminatory evidence the Commonwealth was able to offer was a witness' statement

---

[11] The deputy sheriff stated that he charged Davis with "maliciously shoot[ing] into an occupied vehicle, first-degree murder, display in a threatening manner a firearm while committing or attempting to commit murder, and reckless handling of a firearm" all at the same time. Thus, it is apparent that the misdemeanor charge was part and parcel of the same incident as the murder and attempted murder.

- 7 -

that Davis was wearing mostly black clothes on the night of the shooting, and the person seen shooting the gun was wearing black. Although the witness testified that he knew Davis, when asked if the person he saw shoot the gun was Davis, he responded, "I can't say. I don't know if it was him or not." Although one witness testified that he had previously made a statement to the police that Davis had told him that Davis had disposed of a gun, the witness denied the legitimacy of that statement at the preliminary hearing and said that he did not see Davis with a gun and did not know what gun Davis was referring to.[12] Furthermore, one witness testified that someone else, other than Davis, had a gun that night. Specifically, the witness testified that the driver of the car in which the victim was sitting when he was killed pointed a gun from inside the car at the witness' sister and out the back of the car.

Finally, the fact that it was the identity of the gunman that was the sole issue presented to the district court judge is evidenced by the argument of counsel. The Commonwealth's only argument at the conclusion of the evidence was: "certainly we have linked the defendant by a preponderance of the evidence to this murder, and I would ask that it be certified."[13] In response, the defense attorney argued that

> the Commonwealth has not established by a preponderance of the evidence any criminal agency on the part of Mr. Davis in this matter. There hasn't been any linkage of the criminal agency with that of Mr. Ronald Davis. And even at this juncture, we respectfully request the dismissal of the felony indictments, and we would request a dismissal of the reckless endangerment misdemeanor [charge] because the Commonwealth has not met its evidence on that matter as well.

---

[12] Additionally, it is clear that this evidence was introduced for the limited purpose of impeaching the witness, not to prove Davis's culpability.

[13] The Commonwealth's Attorney did not address any of the other elements that would be required to be proven in order to convict Davis of reckless handling of a firearm.

Thus, the judge's factual finding, when read in the context of the evidence presented by the Commonwealth and the argument of counsel, simply does not support a conclusion that the misdemeanor acquittal was based on any element of any of the offenses under consideration other than the identity of the criminal agent. Simply put, based on the evidence presented at the preliminary hearing, a finding that Davis did not fire the firearm means he did not handle the firearm. Thus, any consideration of the reckless element of the offense would be superfluous.[14] Therefore, it is abundantly clear that the verdict in the misdemeanor trial was grounded on the very issue that Davis sought to preclude from reconsideration in the subsequent murder trial— whether Davis was the gunman.

In sum, from a review of the evidence presented and considering the specific factual finding made by the district court judge, we conclude that this is "'the rare case where it was possible to determine with certainty what the [trier of fact] in the earlier prosecution had decided.'" Jones, 217 Va. at 233, 228 S.E.2d at 128 (quoting United States v. Cioffi, 487 F.2d 492, 498 (2d Cir. 1973)). Since the district court judge, in acquitting Davis of the misdemeanor, held that the Commonwealth had failed to establish that Davis was the gunman, the Commonwealth was precluded from relitigating that fact in the prosecution of the crimes of murder and attempted murder arising out of the same event.[15] Therefore, we hold that Davis's

---

[14] The Commonwealth argues that a dismissal of a reckless charge, in itself, does not preclude a later conviction of an intentional crime because a finding of an absence of recklessness would not bar a later finding of an intentional act. This ignores the fact that the element under consideration is not the way the firearm was used, but, rather, who used it.

[15] We note, as Davis points out in his brief before this Court, that while it is arguable that the misdemeanor dismissal would not serve as a bar to prosecute the defendant as a principal in the second degree, the indictment and the jury instructions make it clear that Davis was convicted as a principal in the first degree. Indeed, the Commonwealth conceded at oral arguments before this Court that at no time throughout the proceedings against Davis did the Commonwealth allege that Davis acted as a principal in the second degree. Thus, we do not need to speculate whether collateral estoppel would bar prosecution under an alternative theory of criminal responsibility.

convictions below must be reversed and the indictments dismissed based on the doctrine of collateral estoppel.

In doing so we note,

> "'[I]t is well established that the choice of offenses for which a criminal defendant will be charged is within the discretion of the Commonwealth's Attorney.' Indeed, 'the institution of criminal charges, as well as their order and timing, are matters of prosecutorial discretion.'"

Barrett v. Commonwealth, 268 Va. 170, 178, 597 S.E.2d 104, 107-08 (2004) (citations omitted) (quoting Barrett v. Commonwealth, 41 Va. App. 377, 391, 585 S.E.2d 355, 362 (2003)). However, that discretion must be exercised with the "'thoroughness and preparation reasonably necessary for the representation' of his client, the Commonwealth." Livingston v. Va. State Bar, 286 Va. 1, 12, 744 S.E.2d 220, 225 (2013) (quoting Va. R. Prof'l Conduct 1.1). That "includes 'inquiry into and analysis of the factual and legal elements of the problem.'" Id. (quoting Va. R. Prof'l Conduct 1.1 cmt. 5). The Supreme Court's lament in Lee bears repetition in this case:

> Our holding results in the reversal of two convictions which were fully supported by the evidence at trial. Yet, we believe the result is constitutionally mandated and illustrates the need for the Commonwealth to assess the evidence carefully and exercise selective discretion in the prosecution of multiple offenses arising from the same transaction.

Lee, 219 Va. at 1111, 254 S.E.2d at 127.

## III. CONCLUSION

For the foregoing reasons, the judgment is reversed and the felony indictments are dismissed. We remand to the trial court for the sole purpose of amending its records to show the correct offense description of attempted capital murder for case numbers CR10025 and CR10026.

Reversed, dismissed, and remanded.

Beales, J., dissenting.

I respectfully dissent. Twelve competent jurors considered all of the evidence and argument presented in the circuit court. Those twelve jurors found Ronald Taft Davis, III, guilty of first-degree murder and attempted first-degree murder beyond a reasonable doubt. Today's decision overturns the jury's verdict – but *not* because of any defect that actually occurred at the jury trial in the circuit court. Instead, applying the doctrine of collateral estoppel, the majority holds that the result of prior proceedings in the general district court absolutely prevented the circuit court jury from concluding that Davis was the triggerman who shot at an occupied vehicle and murdered the victim in this case. Thus, the majority opinion reverses Davis's convictions *and* dismisses the indictments against him.

A review of case law indicates that collateral estoppel is only rarely applied in such a manner because the elements of collateral estoppel are seldom met. I respectfully disagree with the majority's conclusion that Davis has presented an appropriate case for invoking the doctrine of collateral estoppel. Simply put, the record does not conclusively establish that the general district court judge could and did necessarily render *a final decision* holding that Davis was not the shooter.

## I. COLLATERAL ESTOPPEL REQUIRES A FINAL DECISION

To establish the defense of collateral estoppel, which has certainly been recognized as a method of protecting a defendant from double jeopardy, a criminal defendant must "demonstrate that the issue whose relitigation he seeks to foreclose was actually decided in the first proceeding." Dowling v. United States, 493 U.S. 342, 350 (1990); see Ashe v. Swenson, 397 U.S. 436, 445 (1970) (holding that the defense of collateral estoppel "is embodied in the Fifth Amendment guarantee against double jeopardy"). "Suffice to say, the numerous attempts to invoke the doctrine have met with little success, a result that was easily predictable." Jones v.

- 11 -

Commonwealth, 217 Va. 231, 233, 228 S.E.2d 127, 129 (1976).  Simply put, it is very difficult to establish the level of specificity that the doctrine of collateral estoppel requires.  "An acquittal, 'standing alone, does not permit a conclusion with respect' to a court's findings or rationale." Rice v. Commonwealth, 57 Va. App. 437, 442, 703 S.E.2d 254, 258 (2011).  Collateral estoppel does not bar a disputed issue of fact from further criminal litigation "unless the record establishes that *the issue was actually and necessarily decided* in the defendant's favor" in the earlier criminal proceeding.  Schiro v. Farley, 510 U.S. 222, 236 (1994) (emphasis added); see also Rhodes v. Commonwealth, 223 Va. 743, 749, 292 S.E.2d 373, 376 (1982).

Here, the General District Court of Surry County held a consolidated proceeding on December 16, 2008, when the general district court judge conducted a preliminary hearing of felony charges against Davis (including first-degree murder) and *also* conducted a trial on the merits of a misdemeanor charge against Davis of reckless handing of a firearm.  At the conclusion of this proceeding, the general district court judge decided not to certify the felony charges to a grand jury, commenting that he did not consider "it reasonable to believe Mr. Davis was the one that fired the weapon" that killed the victim.  The general district court judge also acquitted Davis of misdemeanor reckless handling of a firearm.  However, the general district court judge *made no findings or statements* pertaining to his decision to acquit Davis of that misdemeanor charge.  The general district court judge only stated, "On the misdemeanor charge as to whether or not you've proven the case beyond a reasonable doubt, I would find that you have not."  On the back of the misdemeanor warrant, the general district court judge simply indicated that Davis was not guilty of the reckless handing of a firearm charge.

Virginia law is clear – abundantly clear – that the general district court judge's decision not to certify the felony charges to a grand jury could not preclude further prosecution of those charges in the circuit court if the Commonwealth successfully obtained a direct indictment from

a grand jury, as occurred here. Davis cannot and has never contested this point. The law is settled in Virginia that "a general district court is without jurisdiction to try felony cases or accept pleas to felony charges." Peterson v. Commonwealth, 5 Va. App. 389, 397, 363 S.E.2d 440, 445 (1987) (citing Code § 16.1-123.1, which defines the jurisdiction of general district courts to adjudicate *misdemeanor* criminal offenses and traffic violations); see also Painter v. Commonwealth, 47 Va. App. 225, 233, 623 S.E.2d 408, 412 (2005). Instead, a general district court judge conducts preliminary hearings of felony charges solely to assess, in that judge's view, whether those felony charges are sufficiently supported by probable cause. See Moore v. Commonwealth, 218 Va. 388, 391, 237 S.E.2d 187, 190 (1977). To that end, Code § 19.2-186 simply authorizes the general district court judge to "discharge the accused if [the judge] considers that there is not sufficient cause for charging him with the offense."

According to the case law interpreting Code § 19.2-186, "a mere dismissal of a felony warrant at a preliminary hearing indicates only a finding of lack of probable cause" and "discharge cannot operate as an acquittal, or finding of not guilty," of that charge or charges. Moore, 218 Va. at 393, 237 S.E.2d at 191. It does not matter if the general district court judge explains why sufficient cause is lacking (as here) or provides no explanation at all. The effect is the same. In either event, the Commonwealth still has the opportunity to demonstrate sufficient cause to a grand jury by way of obtaining a direct indictment. Id.

Regardless of whether *and why* the general district court believed there was not sufficient probable cause for the felony charges, a grand jury still could – and did – override that view and indict Davis on those same felony charges. If a general district court judge's basis for rejecting sufficient cause to support felony charges cannot prevent a grand jury from later indicting the defendant on those same felony charges, then a general district court judge's view on that issue surely cannot prevent a jury from *convicting* the defendant of those same offenses beyond a

- 13 -

reasonable doubt. Yet Davis's argument on appeal, boiled down to its essence, directly contradicts this common sense.

## II. THE GENERAL DISTRICT COURT ISSUED A GENERAL VERDICT

Davis identifies only one charge that the general district court judge actually had authority to decide in a final judgment – the misdemeanor reckless handling of a firearm charge. See Code § 16.1-123.1(1)(b) (granting the general district courts exclusive original jurisdiction to adjudicate misdemeanor criminal offenses). However, the record shows that the general district court issued the type of generalized, non-specific acquittal that cannot alone establish collateral estoppel. See Rice, 57 Va. App. at 443, 703 S.E.2d at 258. Nevertheless, Davis claims that the circuit court jury (which ultimately convicted Davis of first-degree murder and attempted first-degree murder) was prevented from even considering whether Davis could have been the shooter. In support of this claim, Davis seeks to piggyback on the general district court judge's comments explaining why the *felony* charges were not certified to a grand jury. The general district court judge stated:

> On the issue of probable cause, clearly the Commonwealth has met its burden as to whether a felony was committed or not—felonies. On the issue of whether or not [the Commonwealth has] shown it *reasonable to believe Mr. Davis was the one that fired the weapon, I find that you have not met that burden, <u>and I find no probable cause</u>*.
>
> On the misdemeanor charge as to whether or not [the Commonwealth has] proven the case beyond a reasonable doubt, I would find that you have not. I'm going to find him not guilty of that charge.

(Emphasis added). However, the general district court judge's view concerning probable cause was not *a final decision* for purposes of achieving the bar of collateral estoppel against any further prosecution on the theory that Davis was the triggerman.

- 14 -

Davis relies on the fact that the preliminary hearing for the felony charges and the trial on the merits for the misdemeanor reckless handling of a firearm charge were consolidated in the same proceeding in the general district court. As the Supreme Court has explained, however, "a preliminary hearing is essentially a screening process" – not an actual trial. <u>Moore</u>, 218 Va. at 391, 237 S.E.2d at 191. The general district court judge's function in the misdemeanor trial was different than his function in the preliminary hearing. Clearly, the general district court judge made his lone comment describing the evidence in this case while addressing the issue of probable cause – i.e., the preliminary hearing portion of its bench ruling. The general district court judge never repeated or even referenced this comment when it acquitted Davis of misdemeanor reckless handing of a firearm.

In short, this case is largely about the proper limits of judicial power, particularly with regard to a court not of record. Indisputably, a judge of a court not of record (such as the general district court judge here) lacks jurisdiction to render a verdict on felony charges. <u>See</u> Code §§ 16.1-123.1 and 19.2-186. However, the doctrine of collateral estoppel potentially supplies a judge of a court not of record with *de facto* power to decide a felony case and essentially acquit a felony defendant – if that judge makes certain findings in a final decision *in a misdemeanor case* that then serve to preclude factual issues being considered by the factfinder in a later felony trial. Viewed from this perspective, the findings of judges of courts not of record potentially can have broad, far-reaching, and perhaps unforeseen consequences on later proceedings.[16] This *de facto*

---

[16] For example, a defendant is charged with misdemeanor trespass and is prosecuted and acquitted in general district court, where (as here) the proceeding happens to be transcribed. Later, a dead body is discovered on the property, evidence establishes that the victim was on the property at the same time that the defendant previously had been alleged to be there in the trespassing case, and DNA evidence connects the defendant with the murder. However, if today's decision were applied to those facts, a murder prosecution could forever be barred under collateral estoppel due to the misdemeanor trespassing acquittal in the general district court – even if the general district court judge did not clearly state, while rendering the final judgment of acquittal on the trespassing charge, that the specific basis for the misdemeanor acquittal was a

- 15 -

extension of the power of judges of courts not of record certainly should not be extended *even further* to include their rulings addressing probable cause for felony charges – where courts not of record have no authority to issue final decisions.  See Restatement of Judgments (Second) § 28(3) (explaining that an issue should not be precluded from further litigation when "[a] new determination of the issue is warranted by differences in the quality or extensiveness of the procedures followed in the two courts or by factors relating to the allocation of jurisdiction between them").

In addition, the United States Supreme Court has further explained that collateral estoppel, which it noted had originated as a civil law doctrine, should be applied cautiously in the context of criminal law.  See Standefer v. United States, 447 U.S. 10, 21-22 (1980).  Even though the facts in Standefer are certainly different than in this case, the Supreme Court explained that the unavailability of an appeal of an acquittal in a criminal case – unlike either party's ability to appeal an adverse judgment in a civil case – is a factor that "strongly militates against giving an acquittal preclusive effect."  Id. at 23.  Given the significant consequences of a collateral estoppel defense on a felony criminal prosecution (such as this case), I would certainly require that the record show that the precise issue the defendant seeks to bar has been clearly and manifestly *decided* with a final decision in the prior proceeding.  Case law governing collateral estoppel already requires no less.  See Schiro, 510 U.S. at 236 (requiring a showing that the issue that the defendant seeks to preclude "was actually and necessarily decided in the defendant's favor" in the prior proceeding).  Consistent with this standard, I would *not* hold that collateral estoppel applied in this case to the issue of Davis being the triggerman *unless*:  (1) the general

---

finding that the defendant was not present on the property at the time alleged in the trespassing warrant.  Because of the far-reaching consequences of the collateral estoppel doctrine in a criminal case, I would (1) require judges of courts not of record to state such preclusive findings – in order for collateral estoppel to apply – while rendering a final decision in a misdemeanor case or (2) otherwise require that the record be manifest that there could be no other possible basis for the general acquittal.

district court judge found while actually rendering the verdict in the misdemeanor case that the precise basis for the acquittal was that Davis did not handle the firearm, or (2) the record was manifest that there could be no other possible basis for a general acquittal in the misdemeanor case.  As neither of those circumstances is apparent from the record here, I would hold that collateral estoppel does not apply in this case.

Here, the general district court judge *could* have explained why he was acquitting Davis of misdemeanor reckless handling of a firearm.  However, he did not.  The general district court judge also *could* have incorporated his comments on felony probable cause by reference when delivering his verdict on the misdemeanor charge, but, again, he did not.

If the general district court judge (a judge of a court not of record) was deciding the misdemeanor charge on the specific basis that Davis did not handle the firearm in question and was not the shooter, then the judge easily could have – and should have – said, *while actually rendering the verdict on the misdemeanor offense,* that this was the precise factual basis for rendering his not guilty verdict.  Since the general district court did not actually do so, I would hold that the transcript of the general district court proceedings establishes nothing more than a general verdict and that the record supports a possible basis for acquittal other than a conclusion that Davis was not the triggerman.

### III.  COLLATERAL ESTOPPEL DOES NOT APPLY

The United States Supreme Court has held:

> [W]here a previous judgment of acquittal was based on a general verdict, courts must "examine the record of [the] prior proceeding, taking into account the pleadings, evidence, charge, and other relevant matter, and conclude whether a rational jury could have grounded its verdict on an issue other than that which the defendant seeks to foreclose from consideration."

Dowling, 493 U.S. at 350 (quoting Ashe, 397 U.S. at 444).  Thus, if it appears that a rational factfinder could have based its verdict in the prior proceeding on resolution of an issue other than

- 17 -

the issue that the defendant seeks to foreclose from consideration in the later proceeding, "then collateral estoppel does not apply." Rice, 57 Va. App. at 443, 703 S.E.2d at 258.

At the December 16, 2008 hearing in the general district court, witness T.J. testified that he was present when the shooting occurred during the early morning hours of November 8, 2008. T.J. testified that the shooter wore black, held a gun about fifteen or twenty feet away from the vehicle that was occupied by the murder victim and others, and began firing at that vehicle. Although T.J. testified that he could not identify Davis (or anyone else) as the shooter, T.J. also testified that he quickly ducked and began to flee the scene as soon as the shooting began. Davis's co-defendant J.G. also testified at the general district court hearing. According to J.G., Davis was dressed in a "black label shirt," "black jeans," and "black shoes" when the shooting occurred.

Viewing the evidence in the light most favorable to the Commonwealth, "as we must since it was the prevailing party" below, Riner v. Commonwealth, 268 Va. 296, 330, 601 S.E.2d 555, 574 (2004), a rational factfinder could consider the combined strength of T.J.'s and J.G.'s testimony and conclude that Davis was the shooter. Those witnesses' testimony establishes that the shooter was wearing black and that Davis was wearing black – creating a reasonable inference that Davis was the shooter. This inference draws further support from the testimony of another witness J.B. (the mother of Davis's child), who testified that several individuals associated with Davis were near the occupied vehicle and were beating on it shortly before the shooting began – but that Davis apparently was not. J.G. actually confirmed this testimony, explaining that Davis was not among those people who were positioned near the vehicle at that time. The fact that Davis was not observed beating on the vehicle reinforces the inference that

Davis was the shooter in black, standing about fifteen to twenty feet from the occupied vehicle – or so a rational trier of fact could find.[17]

On this record, the general district court's general acquittal of Davis on the misdemeanor reckless handing of a firearm charge does not mean that *a rational factfinder* in the general district court judge's shoes would actually and necessarily decide that Davis simply was not the shooter. See Schiro, 510 U.S. at 236; Rhodes, 223 Va. at 749, 292 S.E.2d at 376. Instead, a rational factfinder with knowledge of the law could find more narrowly that the elements for the specific offense of misdemeanor reckless handling of a firearm had not been satisfied.[18]

I disagree with the majority's conclusion that the Supreme Court's decision in Lee v. Commonwealth, 219 Va. 1108, 254 S.E.2d 126 (1979), is controlling on the facts in this case. On the contrary, the Supreme Court expressly stated in Lee that its holding "is strictly confined to the facts as detailed in the stipulation filed" by the parties in that case. Id. at 1111, 254 S.E.2d at 127-28. There, the parties *stipulated* that the general district court granted Lee's motion to

_____

[17] There was considerably more evidence of Davis's guilt as the triggerman in these crimes produced at the trial in circuit court. This analysis relies only on such evidence that was presented in the general district court proceeding.

[18] The Commonwealth, after all, presented no evidence at the December 16, 2008 hearing concerning how the shooter handled the firearm – other than T.J.'s testimony that the shooter held the firearm in a manner that T.J. demonstrated to the general district court judge and then fired "[a] lot of shots." Viewing the evidence in the light most favorable to the Commonwealth (as we must since it prevailed below), a rational factfinder could conclude that Davis shot and killed the murder victim in a manner that was premeditated – but was not necessarily reckless. See Darnell v. Commonwealth, 6 Va. App. 485, 491, 370 S.E.2d 717, 720 (1988) (defining conduct as "reckless" when it occurs "'although no harm was intended'" (quoting Black's Law Dictionary 1142 (5th ed. 1979))); see also Mangano v. Commonwealth, 44 Va. App. 210, 217, 604 S.E.2d 118, 121 (2004) ("The culpable conduct necessary for reckless conduct falls between the criminal negligence necessary for involuntary manslaughter and ordinary negligence."). Here, Deputy R.L. Shears testified at the hearing in the general district court that, when he arrived on the scene, he observed "several bullet holes to the rear of the vehicle, to the driver's side of the vehicle, and bullet holes to the passenger side of the vehicle." Contra Bailey v. Commonwealth, 5 Va. App. 331, 336, 362 S.E.2d 750, 752 (1987) (where the defendant, while "horseplaying," pointed his gun at the victim – accidentally killing the victim when the gun fired). In short, here there were many bullets fired at the vehicle and its occupants.

strike in a misdemeanor case on *the precise factual issue* that Lee later sought to foreclose in the circuit court under the doctrine of collateral estoppel. Id. at 1109-10, 254 S.E.2d at 127. Here, by contrast, no such stipulation exists – and nothing stated by the general district court judge in his verdict on the misdemeanor charge *actually and necessarily* forecloses the allegation that Davis was the shooter in question.[19] Accordingly, I would hold that collateral estoppel is not available to Davis – neither under the holding in Lee nor under the holding in any other decision that is binding on this Court.

## IV. CONCLUSION

In this case, the general district court judge issued a general verdict acquitting Davis of misdemeanor reckless handling of a firearm. The general district court judge did not explain why he was acquitting Davis of that charge when he acquitted him. That judge's comments explaining why he also was not certifying felony charges to a grand jury cannot support Davis's

---

[19] Davis's counsel did not even cite any specific ground in support of his motion to dismiss the misdemeanor reckless handling of a firearm charge. Indeed, the argument made by Davis's counsel in the general district court for dismissing the misdemeanor reckless handling of a firearm charge was no more specific than the general verdict announced by the general district court judge in acquitting Davis on that charge. While Davis's counsel asserted that the felony charges should not be certified to a grand jury because the Commonwealth's evidence as to those charges did not establish Davis's criminal agency, Davis's counsel only stated a general argument pertaining to the misdemeanor charge. Davis's counsel merely argued that the misdemeanor reckless handling of a firearm charge should be dismissed "because the Commonwealth has not met its evidence on that matter as well." The circumstances of this case are different than those in Lee, where the record established "the express language of the stipulation that the judgment of dismissal" rendered by the general district court judge in that case "was based on insufficiency of the evidence, *the particular ground assigned by defendant in his motion to dismiss*." Lee, 219 Va. at 1111, 254 S.E.2d at 127 (emphasis added); see also Simon v. Commonwealth, 220 Va. 412, 419, 258 S.E.2d 567, 572 (1979) (where, in a misdemeanor DUI case, a transcript of the general district court proceedings showed that Simon's counsel moved to strike the Commonwealth's evidence on the specific basis that the evidence "was insufficient, as a matter of law, to establish that [Simon] was intoxicated while operating a motor vehicle" and the general district court judge granted the motion to strike on this specific basis). Thus, unlike in this case, in Lee it was clearly established that the general district court judge specifically issued a final decision on the precise issue for which Lee sought the preclusive effect of collateral estoppel.

claim of collateral estoppel – given that a judge of a court not of record cannot render final decisions on felony charges. Based on the record in this case, a rational factfinder could have acquitted Davis of misdemeanor reckless handing of a firearm without also finding that Davis was not the shooter. Therefore, Davis fails to satisfy the burden of a collateral estoppel defense – and the Supreme Court's decision in Lee is not controlling here because the Supreme Court limited that decision to the facts of that case, in which the general district court judge acquitted Lee of the misdemeanor charge for the specific reason on which collateral estoppel in the circuit court was based. Accordingly, for the foregoing reasons, I respectfully dissent from the majority opinion and would affirm the circuit court jury's convictions of Davis for first-degree murder and attempted first-degree murder.[20]

---

[20] As I would hold that Davis's second and third assignments of error have no merit, I would also affirm the judgment of the circuit court as to those assignments of error.